# EXHIBIT A



Office of the Secretary of State

ilsos.gov

# Business Entity Search

## Entity Information

| | | | |
|---|---|---|---|
| **Entity Name** | JIMENEZ & SONS CONSTRUCTION, INC. | | |
| **File Number** | 68972108 | **Status** | DISSOLVED on 09-13-2019 |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 04-04-2013 | **State** | ILLINOIS |
| **Duration Date** | PERPETUAL | | |
| **Annual Report Filing Date** | 00-00-0000 | **Annual Report Year** | 2019 |
| **Agent Information** | AYMAN MRYAN 3108 S OAK PARK AVE BERWYN ,IL 60402 | **Agent Change Date** | 05-18-2015 |

## Services and More Information

Choose a tab below to view services available to this business and more information about this business.

| Old Corp Date | Old Corp Name |
| --- | --- |
| 12-07-2018 | JIMENEZ & SONS EXCAVATING & TRUCKING, INC. |

Choose a tab below to view services available to this business and more information about this business.

| Officer | Name and Address |
| --- | --- |
| President | SAM JIMENEZ 718 S CLAREMONT AVE CHICAGO IL 60612 |

# EXHIBIT B

## MEMORANDUM OF AGREEMENT
### Chicago Area Independent Contractors Association Heavy, Highway and Underground Agreement

48197

THIS AGREEMENT made and entered into by and between _Jimenez & Sons Excavating + Trucking Inc. 3401 So. Cicero Ave Cicero Il 60804_, its successors and assigns, hereinafter referred to as the "EMPLOYER," and LOCAL 150, INTERNATIONAL UNION OF OPERATING ENGINEERS, hereinafter referred to as the "UNION" (collectively, "the Parties"), in consideration of the promises exchanged do hereby agree as follows:

1.  The EMPLOYER recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER within the territorial and occupational jurisdiction of the UNION. Prior to recognition under Section 9(a) of the National Labor Relations Act, the UNION requested recognition as the Section 9(a) majority representative and offered to the EMPLOYER valid written evidence of the UNION'S exclusive designation as bargaining representative by the majority of the employees of EMPLOYER covered by the Agreement. Based on the UNION'S offer, the EMPLOYER granted the Union recognition under Section 9(a) of the Act.

2.  The Parties do hereby adopt the Master Agreement commonly referenced as the Heavy, Highway and Underground Agreement entered into by and between the UNION and the CHICAGO AREA INDEPENDENT CONTRACTORS ASSOCIATION ("CAICA" or "the Association"). The Parties do hereby mutually agree to be bound by the terms and conditions of that Master Agreement and the Agreement and Declaration of Trusts referenced therein, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein. The EMPLOYER acknowledges that he/she has received a copy of the aforesaid Master Agreement, that he/she has reviewed same, and that he/she is aware of the obligations arising thereunder.

3.  This Agreement and the adoption of the Master Agreement and the Agreements and Declarations of Trust referenced in Paragraph 2 above shall be effective as of the date of execution below, and remain in effect up to and including the expiration date of the Master Agreement adopted herein. This Agreement shall continue in effect from year to year thereafter and specifically adopt any successor agreement to the Master Agreement entered between the UNION and the Association subsequent to the expiration date of the Master Agreement herein adopted unless notice of termination or amendment is given in the manner provided herein.

4.  Either Party desiring to amend or terminate this Memorandum of Agreement must notify the other in writing at least three (3) calendar months, but not more than four (4) calendar months, prior to the expiration of the Master Agreement adopted herein.

IN WITNESS WHEREOF, the Parties have executed this Memorandum of Agreement by their duly authorized officers and/or agents the 10th day of MAY , 2016. If an electronic signature is used to execute this Agreement, the signer intends that signature to authenticate this record and/or have the same effect as an ordinary non-electronic signature, including proof of willingness by the signatories to bind the Party each signatory represents. The Parties agree to apply the Illinois Electronic Commerce Security Act to this document even if the Parties do not reside or do business in Illinois or are otherwise not subject to the law.

Jimenez Son's
_____
Employer

By: Sam Jimenez
_____
Samu - C.EO
Title
Sam Jimenez

By: _____
_____
Title

cc: Employer
Phone: 708-447-6825
E-Mail: SamdJimenezSon's.com
Fax:

LOCAL 150 INTERNATIONAL UNION OF
OPERATING ENGINEERS, AFL-CIO

By: _____
President-Business Manager

By: _____
Recording-Corresponding Secretary

By: _Wallace Bradley_ Dist. 1
Business Representative




# EXHIBIT C

# ILLINOIS
# HEAVY AND HIGHWAY
# AND UNDERGROUND
# AGREEMENT
### DISTRICTS 1-2-3

# INTERNATIONAL UNION OF
# OPERATING ENGINEERS
# LOCAL 150, AFL-CIO

**Effective**
**June 1, 2021 through May 31, 2024**

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

## Contents

JOINT AGREEMENT ................................................................................................ 1
ARTICLE I ............................................................................................................... 2
   SECTION 1 - BARGAINING UNIT ........................................................................ 2
   SECTION 2 - NEW AND UNLISTED EQUIPMENT .............................................. 3
   SECTION 3 - RECOGNITION ................................................................................ 3
   SECTION 4 - SUBCONTRACTOR ......................................................................... 4
   SECTION 5 - ACCESS TO PREMISES .................................................................. 4
   SECTION 6 - NO DISCRIMINATION .................................................................... 5
   SECTION 7 - SCOPE OF WORK ........................................................................... 5
   SECTION 8 - PRE-JOB/JOB CONFERENCE ......................................................... 6
   SECTION 9 - PREVAILING WAGE SCALE .......................................................... 6
   SECTION 10 - SUCCESSOR/EMPLOYERS ........................................................... 7
      A.    SUCCESSOR/EMPLOYERS: ........................................................... 7
      B.    NOTICE TO THE UNION: .............................................................. 7
      C.    NO DOUBLE-BREASTING: ............................................................. 8
   SECTION 11 - ASSIGNMENT OF WORK .............................................................. 8
ARTICLE II .............................................................................................................. 9
   A.UNION SHOP .................................................................................................... 9
   B.MANAGEMENT RIGHTS ................................................................................... 9
ARTICLE III ........................................................................................................... 10
   SECTION 1 - WORK DAY AND WORK WEEK .................................................... 10
   SECTION 2 – HOLIDAYS .................................................................................... 13
   SECTION 3 - OVERTIME ..................................................................................... 13
   SECTION 4A - PAYDAY FOR EMPLOYEES DURING THE SHOW-UP TIME PERIOD 13
   SECTION 4B - PAYDAY FOR EMPLOYEES WHO ARE NOT REQUIRED TO WORK
   DURING CALL OFF ............................................................................................ 14
ARTICLE IV ........................................................................................................... 14
   SHIFT WORK ..................................................................................................... 14
ARTICLE V ............................................................................................................ 15
   SECTION 1 - SEVERANCE PAY .......................................................................... 15
   SECTION 2 - WAGE PAYMENT .......................................................................... 15
   SECTION 3 - TRANSPORTATION AND PARKING .............................................. 16
   SECTION 4 - DUTIES OF THE EMPLOYER ........................................................ 16
   SECTION 5 - INSURANCE, SAFETY, SANITATION ............................................ 17
   SECTION 6 – CELL PHONE PROHIBITION ........................................................ 17
ARTICLE VI ........................................................................................................... 17
   SECTION 1 - MAINTENANCE AND HEAVY DUTY REPAIR ............................... 17
   SECTION 2 - LOADING AND UNLOADING ........................................................ 18
   SECTION 3 - MOVING/TRANSPORTATION ........................................................ 19
   SECTION 4 - MECHANICS .................................................................................. 19
ARTICLE VII .......................................................................................................... 20

i

CRAFT FOREMAN ................................................................................ 20
ARTICLE VIII ............................................................................................ 21
  SECTION 1 - PREPARING EQUIPMENT ............................................. 21
  SECTION 2 - MACHINERY OPERATION ............................................ 23
  SECTION 3 - LONG BOOM PAY ......................................................... 26
  SECTION 4 - CAPACITY PAY .............................................................. 26
  SECTION 5 – AUGERS, DRILL RIGS, LARGE DEEP FOUNDATION AND GROUND IMPROVEMENT RIGS ......................................................................... 26
  SECTION 6 - CRETER CRANES ......................................................... 27
  SECTION 7 - TRUCK MOUNTED CONCRETE PUMPS AND CONVEYORS ................. 27
  SECTION 8 - HELICOPTERS ............................................................... 27
  SECTION 9 - UNDERGROUND WORK ............................................... 28
  SECTION 10 - MINING MACHINES - BORING MACHINES – MICRO TUNNELING... 28
  SECTION 11 - SKID STEER LOADERS, FORKLIFTS SERVING BRICK MASONS AND DRILLS ............................................................................................ 29
  SECTION 12 - ASPHALT PLANTS ....................................................... 30
ARTICLE IX ............................................................................................... 30
  SECTION 1 - DISCHARGE ................................................................... 30
  SECTION 2 - NOTICE ON LEAVING JOB ........................................... 30
  SECTION 3 - REGULAR ASSIGNED ENGINEERS ............................ 31
  SECTION 4 - CHANGING FROM ONE MACHINE TO ANOTHER ..... 31
  SECTION 5 - SKIDSTEERS .................................................................. 32
  SECTION 6 - IDLE TIME - CLASS I, CLASS II, CLASS III EQUIPMENT.............. 32
  CLASS IV AND V EQUIPMENT AND OILERS ..................................... 32
ARTICLE X ................................................................................................ 32
  DUTIES OF THE OILER/HELPER ....................................................... 32
ARTICLE XI ............................................................................................... 33
  SECTION 1 - SMALL EQUIPMENT ...................................................... 33
  SECTION 2 - SMALL CATEGORY EQUIPMENT ASSIGNMENT ....... 33
  SECTION 3 - ELECTRIC SUBMERSIBLE PUMPS - JOB SITES OR PROJECTS............ 35
    COMBINATION A & C ...................................................................... 36
    COMBINATION D & B ...................................................................... 36
  SECTION 4 - ELECTRIC SUBMERSIBLE PUMPS - TUNNELS, ETC. ............. 36
ARTICLE XII .............................................................................................. 37
  HIRING ................................................................................................. 37
ARTICLE XIII ............................................................................................. 37
  SECTION 1 – GRIEVANCE AND ARBITRATION ............................... 37
  SECTION 2 - JURISDICTIONAL AWARD ........................................... 41
ARTICLE XIV ............................................................................................. 41
  JOB STEWARD ................................................................................... 41
ARTICLE XV .............................................................................................. 42
  SECTION 1 - WAGE RATES AND FRINGE BENEFITS[5] .................. 42
    CLASS II .......................................................................................... 49
    CLASS III ......................................................................................... 53

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

CLASS IV ........................................................................................... 55
CLASS V ............................................................................................ 57
WINTER MAINTENANCE WORK .......................................................... 57
HAZMAT PAY ..................................................................................... 57
SECTION 2 – FRINGE BENEFITS ........................................................ 58
FRINGE BENEFITS FOR FIRST AND SECOND YEAR APPRENTICES ...... 58
FRINGE BENEFITS FOR THIRD AND FOURTH YEAR APPRENTICES ...... 59
WAGES FOR APPRENTICES ................................................................. 60
ARTICLE XVI- FRINGE BENEFITS ............................................................ 61
ARTICLE XVII ........................................................................................ 65
A. DUES CHECK OFF ......................................................................... 65
B. FEDERAL PAC CHECK OFF .......................................................... 66
ARTICLE XVIII ....................................................................................... 67
SECTION 1 – PENALTY FOR FAILURE TO PAY ALL FUND CONTRIBUTIONS ........ 67
AND/OR DUES CHECK OFF AND/OR JOINT GRIEVANCE COMMITTEE AND/OR
ARBITRATION AWARD AND/OR ATTORNEY'S FEES/AND OR LIQUIDATED
DAMAGES ........................................................................................... 67
SECTION 2 – PENALTY FOR FAILURE TO PAY WAGES .............................. 68
SECTION 3 – BONDING OF EMPLOYER ................................................. 69
SECTION 4 – LEGITIMATE PICKET LINE ................................................. 69
ARTICLE XIX ......................................................................................... 69
SAVINGS CLAUSE ............................................................................... 69
ARTICLE XX .......................................................................................... 70
ENTIRE AGREEMENT OF THE PARTIES ................................................ 70
EFFECTIVE DATE ............................................................................... 71
PIGGYBACKING AND STAGING OF ELECTRIC SUBMERSIBLE PUMPS ........ 72
MEMORANDUM OF CLARIFICATION/SEWAGE PLANTS ........................... 73
COMPETITION COMMITTEE ............................................................... 74
LETTER OF UNDERSTANDING
DATED JUNE 1, 1987 ........................................................................ 75
LABOR MANAGEMENT COMMITTEE TRENCHING MACHINES ................. 76
LETTER OF UNDERSTANDING
DATED JUNE 1, 2001 ........................................................................ 77
ARBITRATION AWARD ....................................................................... 78
CRUSHING OPERATIONS ................................................................... 79
CONCRETE PLANTS ........................................................................... 81
JOINT LABOR-MANAGEMENT UNIFORM DRUG/ALCOHOL ABUSE PROGRAM .... 82
EMPLOYER PERSONNEL POLICY SIDE LETTER ......................................... 86
OFF ROAD TRUCKS ................................................................................ 89
LETTER OF UNDERSTANDING REGARDING RANDOM DRUG TESTING ............ 90
PANDEMIC ADDENDUM ......................................................................... 91

iii

**CHICAGO AREA INDEPENDENT CONTRACTORS ASSOCIATION**

**HEAVY AND HIGHWAY AND UNDERGROUND CONSTRUCTION AGREEMENT**

## JOINT AGREEMENT

THIS AGREEMENT, made and entered into this 1st day of June, 2021, through May 31, 2024 by and between the **Chicago Area Independent Contractors Association**, for and on behalf of the present and future members of its Member Associations, and the individual members thereof, individually and their successors and assigns, hereinafter for convenience, referred to as the "Employer" and the **International Union of Operating Engineers, Local Union No. 150, AFL-CIO**, hereinafter for convenience, referred to as the "Union".

## INTENT

The terms and conditions of this Agreement relating to the employment of employees have been arrived at by means of collective bargaining and the Agreement shall be deemed to be the Agreement of each of the Association's Members and shall be binding on all parties hereto and their respective members. For the purpose of mutual convenience and standardization, this Agreement has been negotiated by and between the Union and the Association.

## PURPOSE

SUBJECT TO THE PROVISION OF THIS AGREEMENT, the purpose of this Agreement is to:

A. Enter into a definite labor-management contract covering the wages, hours, conditions of work and terms of employment in the relationship between Employer and employee.

B. Describe the respective rights and responsibilities of the Employer and the Union.

C. Prevent strikes, lockouts and stoppages of work on account of contract or jurisdictional disputes by requiring prior arbitration procedure.

D. Promote the efficiency and productivity of the construction industry.

E. Protect the economic and employment welfare of the employees.

F. Comply at all times with State and Federal Law governing labor-management relations.

1

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

**G.** Provide the principle of Union Security.

**H.** Preserve to the Employer the basic and intrinsic rights of management to decide and conduct its own operation in a competitive free enterprise system.

**I.** Improve the local, state and national economy by quality performance.

**J.** Observe and protect the public interest.

**K.** Provide and maintain a safe and violence-free work environment for all employees.

# ARTICLE I

## SECTION 1 - BARGAINING UNIT

The bargaining unit shall consist of all employees engaged in work covered by the occupational jurisdiction of the Union with reference to any and all of the classifications described in Article I, Section 7, "SCOPE OF WORK", and Article XV, Section 1, "WAGE RATES AND FRINGE BENEFITS," wages, hours of work and all other terms and conditions of employment set forth in this Agreement and the operation, maintenance, repair, moving, dismantling, assembly, and disassembly of all machines used on work coming within the occupational jurisdiction of the Union regardless of motive power, and/or mode of control (including but not limited to remote control, autonomous and semi-autonomous operation).

The bargaining unit shall also include, for the purposes of Article XVI, Sections 1 and 2, and for such purposes only, such persons in the employ of an Employer herein referred to as "Supervisors", defined in the LMRA, as amended, as follows:

...have authority, in the interest of an Employer, to hire, transfer, suspend, lay-off, recall, promote, discharge, assign, reward, or discipline, other employees, and who have responsibility to direct them or adjust their grievances, or effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely of a routine or clerical nature, but requires the use of judgment, and, provided, further, that such Supervisor:

**A.** has heretofore been included as a member of the "bargaining unit" as that term is defined in the preceding paragraph of this Article I, Section 1, or as defined in any previous collective bargaining agreement entered into between the parties hereto, and

2

**B.** was an employee on whose behalf five (5) years prior to the effective date of this Agreement contributions were required to be made for at least 5,000 hours worked, or wages received, as the case then required.

## SECTION 2 - NEW AND UNLISTED EQUIPMENT

It is mutually agreed between the Union and the Association to meet and discuss on wage rates and manning requirements for all new and unlisted equipment which is not listed in this Agreement but that the Union claims under the jurisdiction of International Union of Operating Engineers. Upon written notification of either party, the Joint Grievance Committee shall meet to discuss all such matters within fourteen (14) days from the date of notification. If the Joint Grievance Committee is unable to resolve such matters, the matter may be submitted within thirty (30) days to a neutral arbitrator. If the Union and the Association and/or Employer cannot agree on an arbitrator, then an arbitrator shall be selected in accordance with the rules and procedures of the American Arbitration Association and the arbitration shall be conducted under and in accordance with such rules and procedures. The cost of such arbitration shall be borne equally by both parties to the arbitration, and the decision of the arbitrator shall be final and binding on all parties and individuals bound by this Agreement. The time limits provided in this Section may be extended by mutual written consent.

## SECTION 3 - RECOGNITION

The Association and the Employers recognize the Union as the sole and exclusive bargaining agent for all employees employed in work covered by the occupational jurisdiction of the Union by Employers who are now members of the Association and who have assigned their bargaining rights to the Association, or such Employers as may hereafter become members of the Association and who assign their bargaining rights to the Associations, or Employers signatory to this Agreement. The Union recognizes the Association as the sole and exclusive bargaining agent for its members on whose behalf they have bargaining authority and for such other firms, persons or corporations as may hereafter become members of the Association and who assign their bargaining rights to the Association.

3

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

Upon execution of this Agreement, the Association shall provide the Union and the Funds with a list of Employers that are members of the Association, Employers who have assigned the Association their bargaining rights, Employers that have authorized the Association to act as bargaining agent, and Employers that have any other relationship with the Association, as well as identification of the nature of each such relationship. The Association shall on the first business day of each month identify for the Union and the Funds any Employer that has altered its relationship with the Association or newly-created a relationship with the Association. The Association shall provide this information using the mechanism required by the Union (e.g., email), and shall include the Employer's name, FEIN, address, phone number, identification of its principals and their email addresses. The Association shall promptly respond to inquiries about specific Employers made by the Union. All other contractor employers engaged in work covered by classifications in this Agreement and the occupational jurisdiction of the Union shall be subject to the terms of this Agreement.

## SECTION 4 - SUBCONTRACTOR

The Employer agrees that he will not contract or sub-contract any work covered by the Scope of Work of this Agreement and/or work coming under the occupational jurisdiction of the Union (including but not limited to assembly, disassembly and dismantling of equipment, construction materials testing, landscaping, welding on tooling and equipment, transportation, and surveying) to be done at the site of construction, alteration, painting, or repair of a building, structure, or other work, except to a person, firm or corporation, party to the applicable current labor agreement with the Union.

## SECTION 5 - ACCESS TO PREMISES

The duly authorized representative of the Union shall be allowed access to any job site or premises. If access is denied, the Union shall request an expedited grievance procedure before the Joint Grievance Committee by fax, electronic or other written communication within forty-eight (48) hours with a fine of TEN THOUSAND DOLLARS ($10,000.00) per week until access is

4

granted with notification to the Association. For this purpose it will be the duty of the Employer to provide adequate passes, as requested by the Union.

## SECTION 6 - NO DISCRIMINATION

It is understood and agreed that the Employer shall not discriminate against any member of the Union, any of its officers, its stewards, or any member serving as a member of a committee authorized by the Union based upon their Union activity. In the application of provisions of this Agreement, there shall be no discrimination by the Employer or the Union against any individual because of such individual's age, race, color, religion, gender, sexual orientation, disability, or national origin, and when the words in the masculine are used herein it shall include the feminine.

## SECTION 7 - SCOPE OF WORK

This Agreement shall apply to work classifications and operations incidental thereto as are herein generally and specifically described:

[1]excavating of all types, paving of all types, bridges, culverts, roads, streets, airport runways, ramps, grading, resurfacing, grade separations, overpasses, underpasses, curbs, gutters, sidewalks, parking areas, skyways, caissons, and all other highway construction work, underground and utility work of all types, hydro and vacuum excavation, sewers, subways, tunnels, water mains, piping, pipe jacking, headwalls, outfall structures, junction chambers, concrete construction, conduits, drainage, sheeting, dewatering, pile driving and all other underground utility work, heavy construction work of all types, dams, cofferdams, dock walls, shore protection and all land-based operations involving lakes, harbors, and river improvements; snow removal, flood controls, civil defense, fire and catastrophe operations of all types, landscaping, black dirt and black dirt fields, and wrecking of all types, dismantling or demolition of any building structure, railroad spurs from main line to building line, all farm and land improvements and all assembly and disassembly of all equipment on the job site coming under the jurisdiction of the operating engineers. When additional employees are

---

[1] See letter of clarification regarding sewage disposal plants.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

needed to maintain or assist in the operation, assembly, disassembly, or maintenance of any type it shall be a member of the Bargaining Unit unless explicitly required by this agreement.

In the application of this section, the aforementioned classifications of work and operations shall not be interpreted to include the following:

Construction, erection, modification, addition to or improvement of a building structure or structures, the construction, erection, modification, addition to or improvement of an industrial plant or commercial construction and the driving of sheeting, piling, caisson work, foundation work or dewatering for a building structure, rapid transit stations, pumping station structures above connecting sewer lines, and slurry operations within the outer perimeter of the building line. When a member of the bargaining unit is working within the Scope of this Agreement and is required to work within the scope of another agreement for any amount of time in the same day, the conditions and wages in the contract most beneficial to the employee shall prevail.

## SECTION 8 - PRE-JOB/JOB CONFERENCE

If the Union or Employer elects, a pre-job/job conference shall be held prior to the commencement of work. At the pre-job/job conference, the Employer shall advise the Union of its requirements as to the workmen required in the respective classifications, the probable starting date, duration of the job, the machines to be used, and the assignments of work. The parties shall reduce the Employer's pre-job requirements and agreements to writing, to be signed by an Employer and Union representative.

Either party may after a job is in progress, if it deems necessary, request a job conference. The pre-job/job conference must be held within five (5) days from the date of request.

Union has the option to strike if an Employer refuses a written request to attend a pre-job/job conference provided that at least forty-eight (48) hours advance written notice of the Union's intent to strike is given to the Employer.

## SECTION 9 - PREVAILING WAGE SCALE

There is set forth in this Agreement in Article XV, a wage scale applicable to work performed by journeymen and apprentices in Cook, DuPage, Will, Kendall, Grundy, Kane,

6

Kankakee, Lake and McHenry counties, all in Illinois, and in Article XV, the applicable wage scales for apprentices in all counties listed above. Such wage scales shall be applicable to contractor, individual, partnership or corporation signatory hereto and their employees engaged in all types of private works and in public works for the state, county, city, United States, or any other public body or any other political or departmental subdivision hereof.

The Union will draft a Rider for an individual Employer to sign when a member works outside of Local 150's geographic scope, which shall include per diem, lodging, transportation, and the wages and fringe benefits contained in this Agreement and must be signed by the Employer and the Union.

## SECTION 10 - SUCCESSOR/EMPLOYERS

A. **SUCCESSOR/EMPLOYERS:** This Agreement, when executed by the parties hereto, shall be binding upon the Union and Employer, their successor, heirs, executors, administrators, receivers in bankruptcy, receivers in equity, trustees or any such other equivalent designee.

B. **NOTICE TO THE UNION:** Employer shall give notice to the Union and the appropriate Fund Office in writing immediately after the occurrence of any of the events relating to the Employer, occurring after the date hereof:

1. Sale, assignment, transfer, or other change in name or ownership;
2. Formation of partnerships;
3. Termination of business;
4. Changes of name commonly used in business operation;
5. Change in form of business organization;
6. Incorporation of business;
7. Dissolution of corporation;
8. Name and business organization of successor; and
9. Admission to or withdrawal from any association operating as a multi-employer bargaining agent.

7

C. **NO DOUBLE-BREASTING:** In order to protect and preserve work for the employees covered by this Agreement, it is agreed the terms of this Agreement shall apply to any joint venture or separate construction business entity primarily engaged in the construction industry and owned or controlled by the Employer, which performs construction work of the type covered by this Agreement within the geographic jurisdiction of this Agreement.

## SECTION 11 - ASSIGNMENT OF WORK

A. The Employer hereby agrees to assign all work that is to be performed in the categories described in Article I, Section 7, Article VIII, Article XI, and/or Article XV to employees in the bargaining unit covered by this Agreement.

B. The Employer, by entering into this Agreement hereby states and affirms that it is the Employer's preference to have all work identified or described in Article I, Section 7, Article VIII, Article XI, and/or Article XV be performed by employees in the bargaining unit represented by the Union covered by this Agreement.

C. Grievances alleging a violation of this Section, based upon assignment of work to employees and/or labor organizations not affiliated with the Building and Construction Trades Department A.F.L.-C.I.O. and/or Joint Conference Board of the Construction Employers' Association and the Chicago & Cook County Building and Construction Trades Council shall be processed through the Grievance Procedure in Article XIII of this Agreement and shall not be considered to be a jurisdictional dispute and thereby excluded from the Grievance Procedure or otherwise subject to a jurisdictional award as that term is defined under Article XIII, Section 2, JURISDICTIONAL AWARD.

D. The Employer agrees to compensate the bargaining unit member who would have worked but for the Employer's violation of this Section at the double (2x) time rate for all hours the bargaining unit member would have worked but for the Employer's violation.

8

# ARTICLE II

## A. UNION SHOP

All employees shall be obligated to become members of the Union after the seventh (7th) day of employment as a condition of continued employment. Any employee who fails to become a member of the Union by his own choice and not by refusal of the Union, or who fails to maintain his Union membership, or non-member who fails to pay required permit fees, shall forfeit his right of employment.

The Union by written notice served electronically or by certified mail upon the Employer may demand the discharge of said employee, specifically stating the basis of said demand, and subject at all times to the Union guarantee to defend, save harmless and indemnify the Employer from any claims or damages accruing to the employee as a result of the wrongful discharge demand by the Union. The foregoing in all other aspects shall be subject to existing and applicable Federal and State laws governing labor management relations. This Union security provision shall be subject to immediate negotiation with the Employer as to any further changes permissible under future legal authority.

## B. MANAGEMENT RIGHTS

The right to manage and conduct the business, including the right to determine what operations are to be conducted, the methods and means of all operations, to introduce new, improved or changed methods, equipment or facilities, to determine the machinery and equipment to be utilized, the right to hire, promote, manage and direct the work force, to schedule the days, hours and shifts of operation, to determine when overtime shall be worked, to layoff and recall employees, to curtail or close down any operation, to sell and dispose of all or any part of the Employer's assets, and to contract or subcontract work, except as specifically limited by this Agreement, are reserved solely to the Employer. The Employer shall not be permitted to alter, modify, derate, override, bypass, or manipulate any equipment to avoid the requirements contained in this Agreement.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

## ARTICLE III

### SECTION 1 - WORK DAY AND WORK WEEK

**A.** The regular starting time for a single shift operation Sunday through Saturday inclusive shall be scheduled at one of the following hours: 6:00 a.m., 6:30 a.m., 7:00 a.m., 7:30 a.m., or 8:00 a.m.

The Employer must establish a regular starting time, then, if the Employer desires to change the established starting time, the employee(s) must be notified before the quitting time of the employee's regular workday of any change in the established starting time for the following day.

**B.** Eight (8) hours shall constitute a normal workday between the hours of 6:00 a.m. and 2:30 p.m., 6:30 a.m. and 3:00 p.m., 7:00 a.m. and 3:30 p.m., 7:30 a.m. and 4:00 p.m., 8:00 a.m. and 4:30 p.m., as the case may be pursuant to the established starting time as set forth in Section 1(A) of this Article.

The provisions set forth in Section 1A and B of this Article shall not apply if there is a governmental agency requiring a different starting time, in which event such requirement shall be the controlling factor. In no event shall such governmental requirement be interpreted to apply to the remainder of this Agreement. For starting times on a single shift operation outside of the normal workday required by a governmental agency, employees shall be paid an additional SEVEN PERCENT (7%) of HHU Class One wages per hour in addition to their straight-time rate of pay. For any other single shifts where the starting times are outside of the normal workday, there must be a pre-job meeting in which both parties mutually agree to the change.

**C.** LUNCH PERIOD - There shall be a regularly scheduled lunch period for all one, two and three shift operations. The lunch period shall be one-half (1/2) hour beginning at the midpoint of the shift(s) or 12:00 noon for a single shift operation. The Employer must establish a regular scheduled lunch period at either the midpoint or 12:00 noon and it shall be for a minimum of one (1) week duration beginning on a Monday and the employees must be notified before quitting time of the employees last day of work prior to the Monday of the change in the established lunch period. On a three shift operation, the employees on all three

10

shifts will work seven and one-half (7-1/2) hours and be paid for eight (8) hours with a half (1/2) hour lunch period at the time specified above. On a two shift operation, the employees on both shifts will work seven and one-half (7-1/2) hours and be paid for eight (8) hours with a half (1/2) hour lunch period at the time specified above. On a two shift operation where the employees are working more than eight (8) hours, both shifts shall receive a half (1/2) hour lunch period, and it shall be taken at the midpoint of the shift, for which the employee shall be paid.

If the Employer requires the employee to work during his scheduled lunch period on a multiple shift operation, the employee shall be paid as provided above and in addition shall receive one- half (1/2) hour at the overtime rate for working during his lunch period. On a single shift operation if the Employer requires the employee to work during his scheduled lunch period, he shall be paid time and one-half (1-1/2) for the lunch period in addition to his normal day's pay.

The above lunch period provision shall also apply to Sundays and holidays, except it shall be paid at the double time (2X) rate.

**D.** CALL OFF - All employees shall be obligated to report for work each day Monday through Friday at the designated starting time as set forth in this Article; however, employees may be notified up until 10:00 p.m. of the previous day for a single shift operation or within six (6) hours after the end of the employee's shift on a multiple shift operation, by an authorized representative of the Employer if there is no work the following day. Otherwise the employee shall report for work and be paid pursuant to the terms of this Article. Employees personally notified on the job before quitting time the previous day or by telephone shall be the only valid means of notification of not reporting for work. The employee shall remain at the job site if so directed by the Employer or his representative. In the event the employee is held more than two (2) hours or has started to work at any time he shall receive a minimum of eight (8) hours pay and shall be paid pursuant to the following for all shifts Sunday through Saturday.

11

1. An employee who reports to work and is informed prior to the starting time of his regular shift, 6:00 a.m., 6:30 a.m., 7:00 a.m., 7:30 a.m. and 8:00 a.m., respectively, that he will not work that day shall receive two (2) hours pay.

2. An employee who reports for work and is informed prior to preparation time (1/2 hour prior to this established starting time) that he will not work that day and is released before two (2) hours have elapsed beginning with the starting time of his preparation time and has not started to work, shall receive two (2) hours pay.

3. An employee who reports to work and commences preparing his machine and is informed prior to his regular starting time that he may not work that day and is released before two and one-half (2-1/2) hours have elapsed beginning at the starting time of his preparation time and is not started to work shall receive one-half (1/2) hour at the overtime rate of pay for preparation time and two (2) hours pay for show-up time.

4. An employee who is requested to report for work prior to 6:00 a.m. on a single shift operation or 8:00 a.m., 4:00 p.m., or 12:00 midnight on a two or three shift operation and prior to the requested starting time is informed that he will not work that day shall receive pay at the overtime rate for the hours prior to the starting times listed in this paragraph and two (2) hours pay for show-up time.

5. An employee who is requested to report for work prior to 6:00 a.m. on a single shift operation or 8:00 a.m., 4:00 p.m., or 12:00 midnight on a two or three shift operation and held on the job more than two (2) hours after the regular starting time or has started to work at any time after the requested starting time shall receive pay at the overtime rate for the hours prior to the starting times listed within this paragraph and for eight (8) hours pay for the normal work day.

6. An employee held on the job more than two (2) hours or is started to work at any time after the employee's regular starting time shall receive a minimum of eight (8) hours pay plus one-half (1/2) hour preparation time when applicable. An employee who is requested to report or who is called out after 8:00 a.m., 4:00 p.m., or 12:00 midnight, respectively, shall be paid back to 8:00 a.m., 4:00 p.m., or 12:00 midnight,

12

respectively, plus one-half (1/2) hour preparation time when applicable, and such hours shall be counted as hours worked in computing overtime.

The above provisions shall be applicable to all single and multiple shifts under the terms of this Agreement. When an employee is requested to report for work on Saturdays, Sundays or holidays, he shall be paid pursuant to the provisions set forth in this Article, except he shall be paid at the applicable overtime rate of pay.

## SECTION 2 – HOLIDAYS

The following holidays are designated as those for which doubletime (2X) shall be paid: NEW YEAR'S DAY, DECORATION DAY, FOURTH OF JULY, LABOR DAY, THANKSGIVING DAY AND CHRISTMAS DAY. A holiday falling on Saturday shall be celebrated on Friday. A holiday falling on Sunday shall be celebrated on Monday. If a holiday falls on a day other than a Saturday or Sunday, it shall be celebrated on that date. Double time is paid for work on the day on which the holiday is celebrated. No work shall be done on Labor Day, except to save life or property.

## SECTION 3 - OVERTIME

All time in excess of eight (8) hours per day and/or forty (40) hours per week and before or after the normal workday and Saturdays shall be paid at the time and one-half (1-1/2) rate of pay.

All hours worked on Sundays shall be paid at the double-time (2X) rate of pay.

All overtime shall be paid to the next half (1/2) hour.

All hours for which the employee receives wages shall be counted as hours worked in computing overtime.

## SECTION 4A - PAYDAY FOR EMPLOYEES DURING THE SHOW-UP TIME PERIOD

Any employee who reports for work on a pay day and is told that there is not work that day shall receive his normal show-up time as long as his paycheck is available to him at his normal place of work during his second hour of his starting time. If an employee is required to wait more than two (2) hours for his paycheck, he shall receive an additional hour's pay for each hour or part of

<div align="center">13</div>

an hour the employee is required to wait for a check unless it has been directly deposited into his account as a result of a Direct Deposit agreement, or previously paid to the employee pursuant to an established payroll service.

## SECTION 4B - PAYDAY FOR EMPLOYEES WHO ARE NOT REQUIRED TO WORK DURING CALL OFF

When the Employer notifies the employee(s) that there will be no work and such day is the regular pay day, the employee(s) check shall be made available to him at his regular place of work no later than the end of the second hour from his regular starting time. Where the Employer chooses to pay by check, the employee(s) shall be compensated two (2) hours at the regular rate of pay for picking up his check plus for each hour or part of an hour beyond the two (2) hour period, he shall receive an additional one (1) hour's pay. If the employee is paid through Direct Deposit on or before his regular payday, he may be called off in accordance with other provisions of the contract and will not be compensated for two (2) hours pay.

## ARTICLE IV

## SHIFT WORK

When shift work is established and work is carried on with three shifts of men working eight (8) hours each, the starting time shall be 8:00 a.m. for the day shift, 4:00 p.m. for afternoon shift, and 12:00 midnight for the night shift, then only single time shall be paid during weekdays, except as provided in this Article. Rotation of multiple shifts may be established at a job conference.

Employees working on the afternoon shift shall receive an additional THREE PERCENT (3%) of HHU Class One wages per hour over the regular rate of pay. Employees working on the night shift shall receive an additional FOUR PERCENT (4%) of HHU Class One wages per hour over the regular rate of pay.

Where two or three shifts are utilized and the Employer wishes the starting time advanced, a representative of the Union and a representative of the Employer shall meet and agree to the starting time for both shifts.

14

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

Where shift work is performed from 12:01 a.m. Saturday to 12:00 midnight Saturday, each shift shall be paid at the rate of time and one-half (1-1/2).

Where shift work is performed from 12:01 a.m. Sunday to 12:00 midnight Sunday, each shift shall be paid at the rate of double-time (2X).

All provisions in Article III pertaining to work week, show-up time and workday, preparation time, overtime, holidays, and pay day shall apply to all one, two, and three shift operations.

An employee who has started to work and goes into overtime or works into another shift shall receive overtime until such individual has been released from work (see regular assigned engineer clause).

## ARTICLE V

### SECTION 1 - SEVERANCE PAY

When the services of an employee are no longer required, he shall receive a full day's pay for the day he is terminated and receive all of his wages before his quitting time, or within twenty-four (24) hours after his quitting time by Direct Deposit to a previously agreed upon checking or savings account, or by Certified Mail postmarked within twenty-four (24) hours after his quitting time. If not paid within said twenty-four (24) hours, the Employer shall pay penalty of four (4) hours of pay to such employee at the straight time rate of pay for each succeeding twenty-four (24) hours of delay. It is understood that the initial twenty-four (24) hour period after notice of termination shall not include Saturdays, Sundays or holidays. Employees shall not be called at home and terminated.

### SECTION 2 - WAGE PAYMENT

Wages shall be payable in United States currency or checks at the option of the Employer, or by Direct Deposit to a previously agreed upon checking or savings account at the option of the employee, and in no event shall the Employer withhold for more than five (5) days, wages accruing prior to the pay day. At the time of payment of wages, the Employer shall furnish the following information on the check stub or accompanying slip to each employee: regular hours worked and

15

overtime hours worked and all deductions including contributions to the Vacation Fund shall be listed separately.

Payday shall be once each week on a specified day during work hours except when payday falls on a Thursday or Friday and such day or the day after is a holiday the employees must be paid prior to the holiday in question. If an employee is not paid on the regular assigned pay day the Employer shall pay penalty of four (4) hours a day to such employee at the straight time rate of pay for each succeeding twenty-four (24) hours of delay.

If a payroll check is returned to the employee for insufficient funds, the Employer shall pay a penalty of eight (8) hours at the straight time rate of pay for the first day of the violation and four (4) hours a day thereafter until a valid payroll check is received by the employee.

## SECTION 3 - TRANSPORTATION AND PARKING

Whenever employees of the bargaining unit are employed on a job site or project where they cannot supply their own transportation to the work area to which they are assigned, the Employer shall furnish transportation from the gate or entrance or an adequate parking lot provided for by the Employer to their place of employment. All shifts shall start and end at a specified gate, entrance or parking lot for all employees for whom such transportation is furnished.

## SECTION 4 - DUTIES OF THE EMPLOYER

It shall be the duty of the Employer to:

**1.** Furnish to the employees a sufficient amount of fresh drinking water at the beginning of each shift at the job site and again during the lunch period. Provide an adequate changehouse (for operating engineers) and sanitary toilets at the job site.

**2.** Provide adequate heated showers for (operating engineers) at the job site on all tunnel jobs.

**3.** Provide an adequate amount of water to keep the dust down.

**4.** Maintain proper ventilation in all working areas pursuant to Section 5 of this Article.

**5.** Provide suitable shelter to protect employees from falling materials and inclement weather; such as hard hats, raingear, summer and/or winter fans and heat housers.

16

**6.** Carry Workmen's Compensation insurance in a Company or Association authorized under applicable state laws and regulations to insure the liability to pay compensation under Workmen's Compensation Laws.

**7.** Make all contributions required under the Illinois Unemployment Compensation Act. When an Employer shall not be subject to the provisions of such Act because of the number of employees in the employing unit, he shall, nevertheless, pursuant to the provisions of said Act, make election to be subject thereto.

**8.** Pay for specialized training as required by individual owners or government agencies to include all tuition, fees, books and other expenses as well as the wages for time spent in direct training (i.e. HAZMAT or specialized safety training), CDL and recertifications are not included.

Upon forty-eight (48) hours written notice, the Union shall have the option to strike any Employer who does not comply with numbers 6 and 7 above.

## SECTION 5 - INSURANCE, SAFETY, SANITATION

The Employer must make adequate provisions to comply with all the rules and laws pertaining to Insurance, Safety and Sanitation as are established by the statutes of the Federal, State and Municipal governments where the work is in progress.

## SECTION 6 – CELL PHONE PROHIBITION

The use of cell phones by employees while operating equipment during work hours is prohibited.

## ARTICLE VI

## SECTION 1 - MAINTENANCE AND HEAVY DUTY REPAIR

When the Employer is performing work covered by this Agreement and such Employer maintains a maintenance and repair shop, or shops, or does repair and equipment maintenance in the field, all employment and applications for employment to perform such work shall be in accordance with the terms and provisions of this Agreement. The Employer shall have the right to have

17

specialized field and shop repair performed by service representatives of manufacturers or equipment dealers who provide such service.

1.     Employees shall keep their equipment in good order and good repair at all times, and shall assist in field repair of same. In the event of a breakdown of equipment, the engineer and oiler, if one is assigned to the equipment, can be re-assigned while it is being repaired only when members of the bargaining unit are assigned to perform the repair work.

2.     If any repair work is to be performed by anyone other than a member of the bargaining unit, the operator and/or oiler shall assist said non-bargaining unit member with the repair, and shall remain with his assigned machine until all repair work is completed.

3.     Unassigned machines shall come under the terms and conditions of number 2 above.

4.     All lubing or any other servicing of equipment in the field will only be performed by members of the bargaining unit, including all Grease Trucks or other means of servicing equipment. When it has been traditionally and historically assigned by the Employer, lubing and any other servicing of equipment in the shop may be performed by a non-bargaining unit member.

On days when operators and oilers are called off or when repair work goes into overtime on a weekday, Saturday, Sunday or holiday, only a bargaining unit mechanic may perform the repairs with no assistance. If another person is needed to assist, it shall be a member of the bargaining unit.

When warranty work is performed on new equipment, the operator and/or oiler may be reassigned.

The length of time warranty work can be performed by factory service representatives shall be limited to the original factory warranty period.

## SECTION 2 - LOADING AND UNLOADING

The loading and unloading of all power driven self-propelled equipment listed in the wage classifications of this Agreement when being moved by means of low-boy trailers, rail or water on the job site, from job site to job site, yard or shop to job site, etc., shall be deemed the work of the operating engineers and shall be covered by the terms of this Agreement. The Employer may at his discretion assign the employee(s) to act as an escort while such equipment is in transit.

18

The loading and unloading of unassigned equipment discussed in this section may be done by an employee(s) assigned to another piece of equipment and shall not be considered a violation of Article IX, Section 4. Provided, however, such operation does not violate Article IX, Section 6, the Idle Time provision.

## SECTION 3 - MOVING/TRANSPORTATION

The moving and transportation of all power driven self-propelled equipment listed in the wage classifications of this Agreement when moved on the job site, from job site to job site, from yard or shop to job site, etc., shall be deemed the work of the operating engineer and shall be covered by the terms of this Agreement. Employees shall receive wages for such travel time until they are returned to the place of origin or their personal transportation, whichever is closer.

If the Employer designates a reporting point other than the job site, employees shall be paid at their applicable rate for time spent going from the reporting point to the job site and if necessary, for returning to the designated reporting point.

## SECTION 4 - MECHANICS

Mechanics shall furnish their own tools but shall not be required to furnish special tools such as: Pin Presses, Spanner Wrenches, Air or Electric Wrenches, Gear and Bearing Pullers, Electric Drills, Reamers, Taps and Dies, Oxyacetylene Hoses, Gauges, Torches and Tips, twenty-four inch (24") Pipe Wrenches, over 3/4 inch Drive Socket Set, sockets over two inches (2"). If by mutual agreement, the mechanic is to use his personal pick-up or similar vehicle for the transporting of his tools, etc., on the job, or from job to job, he shall be compensated at not less than ONE THOUSAND DOLLARS ($1,000.00) per month plus all fuels, oil, and any additional insurance rider for said vehicle. In no event shall the furnishing of said vehicle be deemed as a condition of employment. Payment for vehicle rental shall be monthly except in case of a lay-off then it shall be as set forth in Article V, Section 1.

The Employer agrees to pay for or replace with equal quality any tools (excluding hand tools guaranteed for life by the manufacturer), broken on the job by mechanics or anyone required to furnish their own tools. The Employer shall maintain an insurance policy or assume the cost risk, for loss of the employee's personal tools, or portion thereof, on Company premises, or job site and

19

while in the Company's utility truck, when due to the theft by break-in and entry, including fire and explosions or other circumstances that may happen on the Company premises, or job site, and/or Company's utility truck. The Employer's liability for such loss shall not exceed the actual cost of the tools. It is understood that all employees must furnish the Employer with a complete inventory of the personal tools and their brand. It is further understood that whenever new tools are purchased, the employee must include them on the inventory list previously furnished, and whenever tools are removed, the inventory shall be reduced. If an employee does not supply the Employer with an inventory of tools, responsibility for replacement will not be that of the Employer. All replacement costs shall be paid within thirty (30) days of a reported loss. Employees must notify the Employer of a loss covered by this provision within three (3) days of knowledge of loss.

## ARTICLE VII

**CRAFT FOREMAN**

One bargaining unit employee will be designated the Craft Foreman during any day the Employer employs fifteen (15) or more operating engineer employees, inclusive of any operating engineer employees working under other agreements, , but exclusive of supervisory personnel. This provision shall not eliminate or modify the requirements for the assignment of craft foreman under the terms of any other agreement.

The Craft Foreman will be a mechanic, unless the Employer employs no mechanics, in which case the Craft Foreman designation may be assigned to one of the other bargaining unit members employed by the Employer and working as an equipment operator.

The Craft Foreman will be the lead man of the employees in the bargaining unit. Such individual, however, shall neither have the authority to, nor shall he exercise any of the functions customarily exercised by a supervisor within the meaning of the National Labor Relations Act, as amended.

Employees covered by this Agreement do not have authority to exercise independent judgment contrary to established and customary company policy and procedures, and they cannot assign and direct other employees contrary to established and customary company policy and procedures. In no way shall such individual be deemed to be an agent of the Union.

20

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

The Craft Foreman will be designated by mutual agreement between the Union and the Employer.

## ARTICLE VIII

### SECTION 1 - PREPARING EQUIPMENT

Engineers on all cranes up to one (1) cubic yard capacity and engineers operating all derricks and[2] all hoists listed in Class I of Article XV hereof, and engineers on cranes of twenty (20) ton lifting capacity or under, shall start one-half (1/2) hour before the regular starting time including shift work to prepare the machine for its operation by oiling, greasing, maintaining and servicing the equipment and shall be paid for said one-half (1/2) hour at the overtime rate.

Combination Backhoe Front Endloader machine with backhoe bucket capacity of less than one (1) cubic yard shall not be subject to preparation time. Combination Backhoe Front Endloader machine with backhoe bucket capacity of one (1) cubic yard or more shall be subject to preparation time.

All Hydraulic Cherry Picker and Telescopic Crawler Crane type machines under twelve (12) ton lifting capacity shall not be subject to preparation time.

All Hydraulic Cherry Picker and Telescopic Crawler Crane type machines of twelve (12) ton lifting capacity to a gross vehicle weight up to one hundred ten thousand (110,000) pounds shall be subject to preparation time.

All Hydraulic Cherry Picker and Telescopic Crawler Crane type machines of over one hundred ten thousand (110,000) pounds gross vehicle weight shall require an engineer and oiler and/or apprentice as the case may be.

All Lattice Boom Crawler Cranes regardless if mounted on Tires, Tracks, or Rail with a manufacture gross vehicle weight of over one hundred fifty five thousand (155,000[3]) pounds shall require an Engineer and an Oiler or Apprentice.

---

[2] Single drum hoist of motive power less than six horsepower will not require preparation time.

[3] All references to the 155,000 pound manufacture gross vehicle weight in this Section shall be based on the weight of the car body, house, tracks, counterweights, and boom butt section.

21

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

All Lattice Boom Crawler Cranes regardless if mounted on Tires, Tracks or Rail with a manufacturer gross vehicle weight of one hundred fifty five thousand (155,000$^3$) pounds and under, shall require an Engineer, but shall not require an Oiler or Apprentice, unless it has an attachment. All Cranes with attachments shall require an Oiler.

All Lattice Boom Crawler Cranes regardless if mounted on Tires, Tracks or Rail with a manufacturer gross vehicle weight of one hundred fifty five thousand (155,000$^3$) pounds and under, the Engineer shall receive one-half (½) hour preparation time, as set forth in Article VIII, Section 1 - Preparing Equipment.

Self-Erecting Tower Cranes: The use of self-erecting, self-contained (excluding counter weight) cranes with a maximum lifting capacity under nine (9) tons shall not require an oiler, but the provisions of Article VIII, Section 1, "PREPARING EQUIPMENT", will apply to the operation of such equipment. If additional employees are needed in the assembly/disassembly or operation of said equipment they shall be members of the bargaining unit.

In the event a dispute arises over the applicability of preparation time, or oiler (Apprentice) requirements, due to the introduction of new models of machines, the Joint Grievance Committee shall meet to make an equitable decision of the machine in question. In the event a majority decision cannot be reached, the dispute shall be progressed to the Arbitration article of this Agreement.

Engineers on conveyor systems will be present and assist when the conveyor system is being set up or dismantled, assembled, disassembled, operated or moved. The engineer will also maintain the generator running the system. An additional engineer shall be required for each additional generator used and also an additional engineer shall be used if the conveyor system is set up in sections on different levels and is not one continuous set of conveyors.

22

## SECTION 2 - MACHINERY OPERATION

All Power Shovels, Cable Backhoes, Cable Draglines, Cable Clamshells and Cranes used in work covered by this Agreement where such machinery is rated by the manufacturer as having a capacity of one (1) cubic yard or over, or over twenty (20) ton lifting capacity, Autograde, [4]Formless Curb and Gutter Machine thirty-six inches (36") in width and over, Roto Mill Grinder thirty-six inches (36") in width and over, Slip-Form Paver, Concrete Paver 27E and over, Central Mix Plants, Asphalt Plants, Batch Plants and Trenching machine thirty inches (30") and over, shall require an engineer and oiler (Apprentice), regardless of motive power.

All Hydraulic Cherry Picker and Telescopic Crawler Crane type machines under twelve (12) ton lifting capacity shall not be subject to preparation time.

All Hydraulic Cherry Picker and Telescopic Crawler Crane type machines of twelve (12) ton lifting capacity to a gross vehicle weight up to one hundred ten thousand (110,000) pounds shall be subject to preparation time.

All Hydraulic Cherry Picker and Telescopic Crawler Crane type machines of over one hundred ten thousand (110,000) pounds gross vehicle weight shall require an engineer and oiler and/or apprentice as the case may be.

All Lattice Boom Crawler Cranes regardless if mounted on Tires, Tracks, or Rail with a manufacture gross vehicle weight of over one hundred fifty five thousand (155,000[5]) pounds shall require an Engineer and an Oiler or Apprentice.

All Lattice Boom Crawler Cranes regardless if mounted on Tires, Tracks or Rail with a manufacturer gross vehicle weight of one hundred fifty five thousand (155,000[5]) pounds and under, shall require an Engineer, but shall not require an Oiler or Apprentice, unless it has an attachment. All Cranes with attachments shall require an Oiler.

---

[4] See letter of intent dated May 6, 1976.

[5] All references to the 155,000 pound manufacture gross vehicle weight in this Section shall be based on the weight of the car body, house, tracks, counterweights, and boom butt section.

23

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

All Lattice Boom Crawler Cranes regardless if mounted on Tires, Tracks or Rail with a manufacturer gross vehicle weight of one hundred fifty five thousand (155,000[5]) pounds and under, the Engineer shall receive one-half (½) hour preparation time, as set forth in Article VIII, Section 1 - Preparing Equipment.

Self-Erecting Tower Cranes: The use of self-erecting, self-contained (excluding counter weight) cranes with a maximum lifting capacity under nine (9) tons shall not require an oiler, but the provisions of Article VIII, Section 1, "PREPARING EQUIPMENT", will apply to the operation of such equipment. If additional employees are needed in the assembly/disassembly or operation of said equipment they shall be members of the bargaining unit.

If another person is required on any of the above cranes, he shall be a member of the bargaining unit.

The assembly and/or disassembly of all cranes shall require an Operator, Oiler, and Mechanic; however, an Employer may use two employees (an Operator and additional member of the bargaining unit) on the assembly and/or disassembly of a hydraulic crane where they have historically done so, but only when it can be done safely. The Oiler and additional bargaining unit members shall be paid at a minimum of Class 1 wages. One bargaining unit member assigned to the assembly and/or disassembly must be designated the A/D Director (as set forth in 29 CFR § 1926.1401-1406) and shall be responsible for directing the assembly and/or disassembly of the crane. If any other employees are needed or assigned to assist, they shall be members of the Bargaining Unit.[6]

Non-employees[7] shall not be permitted to perform or assist with the assembly or disassembly of any crane. In order to avoid worksite conflict and liability for the Employer, and

---

[6] All terms contained in the Letter of Understanding dated June 14, 2018 are expressly terminated unless otherwise included in this Agreement.
[7] Examples of non-employees include activist groups, employees of other employers, good Samaritans, other similarly situated individuals who, for example, by lack of training, lack of pre-hire drug testing by the Employer, or exclusion from the Illinois Workers' Compensation Act create a safety risk for the employees and liability for the Employer.

24

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

to ensure the safety of the Bargaining Unit, if any non-employee attempts to perform or assist with the assembly or disassembly of any crane, the Employer shall instruct its employees to withdraw from the worksite, and employees shall have the right to withdraw from the worksite, until the authorities have removed the non-employees from the worksite. The only exceptions to the ability of non-employees to assist with the assembly or disassembly of any crane are as follows: 1) crane rental companies may rent cranes to customers "bare,"[8] and if that customer asks the renting company to provide a crane erection mechanic for assembly/disassembly of a bare rental, the renting company may provide a single mechanic to direct the customer on the assembly and/or disassembly; 2) non-crane rental companies that own a crane or rent it "bare," may allow Pile Drivers and/or Ironworkers who work directly for the same non-crane rental company as the members of the Bargaining Unit, to assist the members of the Bargaining Unit with the assembly or disassembly in situations where the labor organizations have agreed to the assistance; however, there must be at least an operator, oiler, and mechanic (with one member of the Bargaining Unit designated the A/D Director) assigned to each crane assembly or disassembly; if Pile Drivers and/or Ironworkers assist in accordance with this provision, the Employer shall assign an additional Bargaining Unit member for each Pile Driver and/or Ironworker assigned to the assembly or disassembly.

Hydraulic machine other than Front Endloaders that are designed to use bucket attachments of various sizes and the manufacturer rates such machine as weighing over one hundred seventy-five thousand (175,000) pounds shall require an oiler. Machines that do not require an oiler pursuant to the above shall be subject to preparation time pursuant to Section 1 of this Article, with the exception of Combination Backhoe Front Endloader machine.

Non-Lattice Boom Truck Cranes having three (3) axles or less shall not require an oiler. All Non-Lattice Boom Truck Cranes having four (4) axles or more, including dolly (dolly shall count as an axle) shall require an engineer and oiler except as heretofore limited.

---

[8] A "bare" rental is, as the name suggests, a crane that is rented without any employees from the crane rental company who would otherwise assist with the assembly, disassembly, or operation of the crane (with the exception of a single crane erection mechanic to be the non-working A/D Director to direct the customer on the assembly

25

On any machine not requiring an oiler when a second man is used, such man shall be an employee of the bargaining unit.

## SECTION 3 - LONG BOOM PAY

All Engineers operating cranes and derricks of all types with booms of ninety feet (90') to one hundred fifty feet (150'), including jib in use or stowed on the machine, shall be compensated an additional SEVENTY FIVE CENTS ($0.75) per hour over and above the regular wage scale for operating such crane. All Engineers operating cranes and derricks with booms of more than one hundred fifty feet (150'), including jib in use or stowed, shall be compensated the aforementioned SEVENTY-FIVE CENTS ($0.75) plus an additional TWENTY CENTS ($0.20) per hour over and above the regular wage scale for operating such crane for each additional ten feet (10') of boom or jib. Including when stowed on the machine. When a boom increment exceeds an even ten foot (10') increment, the engineer will receive payment based on the next ten-foot (10') increment.

## SECTION 4 - CAPACITY PAY

All engineers operating cranes and derricks with a manufacturers rated maximum capacity exceeding fifty (50) ton shall be compensated THREE CENTS ($0.03) per hour for each ton of the rated capacity in excess of fifty (50) ton. Long Boom Pay Section 3 and Capacity Pay Section 4 of this Article shall not be pyramided, but the highest rate shall prevail.

## SECTION 5 – AUGERS, DRILL RIGS, LARGE DEEP FOUNDATION AND GROUND IMPROVEMENT RIGS

All engineers operating crane mounted augers with kelly bars, cranes with pneumatic, diesel, hydraulic, or electric driven pile hammers or drills, raised blind hole drills, and track or truck mounted drill rigs shall be compensated an additional ONE DOLLAR AND FIFTY CENTS ($1.50) per hour over and above the regular wage scale for operating such equipment. This Section applies to the rig operator and oiler.

and/or disassembly).

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

If the crane requires an oiler and the attachment requires an auxiliary power unit such as an air compressor, hydraulic power pack, or generator for Hydraulic or pneumatic pile attachment the oiler will service that power unit and receive an additional ONE DOLLAR AND FIFTY CENTS ($1.50) per hour over and above the regular wage scale and any other additional compensated amounts. Power packs for vibrators or oscillators driving over two-foot diameter casing require an operator for the power pack, with no additional pay under this Section being paid to the oiler.

When a crane without an oiler has an attachment that requires an auxiliary power unit of any size or capacity, it shall require an operator oiler/helper to operate that auxiliary power unit.

## SECTION 6 - CRETER CRANES

Concrete conveyors mounted on rough terrain cranes (creter cranes) eighteen (18) ton and over shall require an engineer and oiler, less than eighteen (18) ton the engineer shall receive preparation time. When the creter crane is equipped with a conveyor system capable of extending seventy feet (70') or more, the engineer shall receive an additional FIFTY CENTS ($0.50) per hour wage increase over and above the regular rate of pay for operating the creter crane.

## SECTION 7 - TRUCK MOUNTED CONCRETE PUMPS AND CONVEYORS

Truck mounted concrete pump or conveyor operations shall require an operator. When such machines are equipped with a boom or conveyor, which is capable of extending ninety feet (90') or more, the engineer shall receive an additional SEVENTY FIVE CENTS ($0.75) per hour wage increase over and above the regular rate of pay for operating the concrete pump or conveyor.

## SECTION 8 - HELICOPTERS

The use of helicopters (external loads) under the terms of this Agreement shall require a three (3) man crew, one (1) pilot and two (2) controllers. The pilot and controllers must have direct radio communications during the actual hoisting operation.

The crew shall receive the hourly wage rate set forth in this Agreement for crane operators, and in addition, the pilot shall receive long boom pay up to a maximum length of five hundred feet (500').

27

## SECTION 9 - UNDERGROUND WORK

**A.** Employees working in tunnels, shafts, etc., shall be paid an additional FORTY CENTS ($0.40) per hour over the regular negotiated wage rate. In addition to this, employees working under air pressure (1/2 lb. to 7 lbs.) shall receive FIFTY CENTS ($0.50) per hour over the regular negotiated wage rate. Employees working under air pressure (7 lbs. or over) shall receive SIXTY-FIVE CENTS ($0.65) per hour over the regular negotiated wage rate. Underground and air pressure pay differential shall apply for the full shift and all overtime to any employee performing work underground or under air pressure.

**B.** All shifts shall start and end above ground, or employees engaged in work described in this Section shall be paid an additional one-half (1/2) hour pay as travel pay at the overtime rate from 0 to 10,500 ft., one (1) hour travel pay for over 10,500 ft. to 21,000 ft., one and one-half (1-1/2) hours travel pay for over 21,000 ft. to 31,500 ft. Travel distance shall be measured from point of entry of the employee. Employees must report before their normal starting time as required by the travel time listed herein. At the end of the shift, employees must be out of the shaft at the normal quitting time or be paid overtime pursuant to the terms of this Agreement unless reason for not being out of the shaft is an act or fault of the employee.

## SECTION 10 - MINING MACHINES - BORING MACHINES – MICRO TUNNELING

    **A.** The crew operating and maintaining the mining machines shall be compensated an additional FIFTY CENTS ($0.50) per hour over and above the regular wage scale for operating and maintaining such machine. For hard rock tunnels twelve feet (12') in diameter and over, the crew shall consist of one (1) operator, one (1) oiler, and one (1) heading mechanic, who shall perform maintenance on any equipment in the tunnel heading. Under twelve feet (12') feet in diameter, one (1) operator and one (1) oiler. Tunnels other than hard rock under seven feet (7') in diameter one operator, seven feet (7') in diameter and over one (1) operator, one (1) oiler.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

**B.** All Micro Tunneling operations shall require three (3) Operators, two (2) Class I Operating Engineers and one (1) Class III Operating Engineer, for tunneling machines and pipe jacking.

## SECTION 11 - SKID STEER LOADERS, FORKLIFTS SERVING BRICK MASONS AND DRILLS

**A.** The operation of Skid Steer Loaders shall be assigned to Operating Engineers except as otherwise provided herein. Skid Steer Loaders, including those machines equipped with small jackhammers (pencil breakers) may be assigned to Laborers for the following work:

1. building demolition work (inside the structure);

2. minor excavation such as curb tear out, replacement and back filling;

3. raising, lowering or movement of manholes; and

4. residential concrete work using one Skid Steer Loader. If more than one such machine is used, additional machines shall be assigned to Operating Engineers.

**B.** Forklifts and Skid Steers with Pallet Fork attachments serving eight (8) or more Brick Masons on commercial projects shall be operated by Operating Engineers. Forklifts and Skid Steers with Pallet attachments serving seven (7) or fewer Brick Masons on commercial projects may be assigned to Laborers.

**C.** Drilling operations using air track type machines shall be the jurisdiction of the Laborers. Drills where compressor units do not supply the power in the operation of the drill shall be the jurisdiction of the Operating Engineers.

**D.** The provisions of this Section shall become effective June 1, 1995. Employers who have traditionally assigned any of the above described Skid Steer Loader operations to Laborers shall not be required to reassign such work to Operating Engineers but shall assign such work to Operating Engineers as the Laborer employees of the Employer currently assigned to such work leave the employ of the Employer through termination or retirement. Upon request, the Employer shall provide a list of the Laborer employees who are covered by this grandfather provision and shall notify the Operating Engineers when such Laborer employees terminate their employment or retire.

29

E. Grievances alleging violations of this Section shall be processed through the Grievance Procedure in Article XIII of this Agreement and shall not be considered to be jurisdictional disputes and thereby excluded from the Grievance Procedure.

## SECTION 12 - ASPHALT PLANTS

An Operator and apprentice/oiler shall be present at all times when Plant is in operation. When Plant is not in operation and silo has been loaded the previous day, the operator shall be present to discharge the material from silo.

Asphalt plants, regardless of configuration, will require only one (1) Operator (Class I) and only one (1) apprentice / oiler when the plant is in operation. Asphalt plant configuration includes, but is not limited to, conveyors, screens or scalpers, compressors and motors. Any equipment listed here that is operated at the plant as stand-alone equipment, not part of the plant configuration, will require an operator in accordance with the contract.

Loaders at the plant will require an Operator in accordance with the contract.

# ARTICLE IX

## SECTION 1 - DISCHARGE

The Employer shall have the right to discharge any employee for just cause. The Employer shall notify the Union within twenty-four (24) hours of the discharge of such employee.

A written and electronic notification to the Union's dispatch office in the applicable District is required in those instances where an Employer does not want a member to be re-dispatched to their company in the future. The member will be unavailable for dispatch to that Employer for a period of two (2) years or sooner at the discretion of the Employer.

## SECTION 2 - NOTICE ON LEAVING JOB

No employee shall leave his job without giving due notice to the Employer and the Union.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

## SECTION 3 - REGULAR ASSIGNED ENGINEERS

The engineers, or crew regularly assigned to a piece of equipment on a single or a multiple shift operation shall be given preference when this piece of equipment is required to work, be repaired or moved (in accordance with Article VI) on a regular workday, Saturday, Sunday and holiday or other overtime.

## SECTION 4 - CHANGING FROM ONE MACHINE TO ANOTHER

**A.** The following shall be the maximum changes an employee shall make during a shift: Machine A to Machine B, back to Machine A plus one other machine. If the rate applicable to one machine is higher than that of another, the higher rate shall apply to and be paid for the full shift. The aforementioned change shall apply to all one, two and three shift operations, respectfully.

**B.** In interpreting and applying this Article, it is understood and agreed that the language therein is not in any way to be interpreted as a limitation on the amount of work any employee is required to do, but only as a limitation on the number of machines such employee can be required to operate or service.

**C.** Any employee covered by this Agreement shall not be permitted to change to a machine that another employee covered by this Agreement has been employed to operate unless the latter has been discharged for just cause, and the Union has been notified of such discharge. However, if through no act or fault of the Employer, the Regular Assigned Employee is not available for work, this clause shall be inoperative.

This provision shall not apply to minor machines in the following instances, notwithstanding Article IX Section 3, "Regular Assigned Engineer":

1. Small compressors, earth rollers and form graders when used on paving work.

2. Small graders, small rollers and small spreaders when used in connection with a blacktop operation.

3. Small combination backhoes, trenching machines and post augers used in connection with the installation of traffic signals.

31

**SECTION 5 - SKIDSTEERS** – Skidsteers or machines of a like nature that are designed to use bucket attachments of various sizes, such machines shall be in Class V wage category.

**SECTION 6 - IDLE TIME - CLASS I, CLASS II, CLASS III EQUIPMENT**

In case of a layoff, a machine must be idle two (2) work days before another employee can be assigned to such machine. If such machine is reactivated before the two (2) day period, the original employee shall be given first opportunity of employment on said machine. However, if such employee is not available, this paragraph shall be inoperative.

**CLASS IV AND V EQUIPMENT AND OILERS** - In case of a layoff, a machine must be left idle one (1) working day before another employee can be assigned to such machine. If such machine is reactivated before the one (1) day period, the original employee shall be given first opportunity of employment on said machine. However, if such equipment is not available, this paragraph shall be inoperative.

## ARTICLE X

**DUTIES OF THE OILER/HELPER**

It shall be the duty of the oiler to keep the machine to which he is assigned thoroughly lubricated and reasonably clean, as instructed by the Engineer and to maintain the machine and assist in such work as directly affects the operation of the machine. The oiler shall be under the technical direction of the Engineer, perform such duties as he prescribes and remain at all times in close proximity to the machine.

The same rules and regulations regarding overtime and working conditions which apply to Engineers shall also apply to oilers, except the oiler shall take his lunch period before or after the Engineer and grease the machine during the Engineer's lunch time.

In addition to the above, duties for an oiler/helper on Drill rigs include: aiding the operator during all phases of work, signaling, handling or connecting drilling tools, safety watch, and learning drill rig operations and maintenance. The Oiler/Helper will assist in loading and unloading equipment and supplies, keeping all equipment on jobsite clean, shoveling cuttings, handling hoses, welding on tooling and equipment, and using and maintaining small equipment and hand tools. The

32

Oiler/Helper is responsible for assisting with drilling operations including, but not limited to, micropiling, ground improvement including stone columns, other deep foundation elements, and soil testing sampling. The Oiler/helper can operate a skid steer, telescopic forklift. or mini excavator intermittently (not to exceed three (3) hours in any day) during the course of his duties working directly with the drill rig and its Operator (but shall receive Class 1 pay when operating a mini excavator). It is understood that this shall not apply to caisson work.

# ARTICLE XI

## SECTION 1 - SMALL EQUIPMENT

An Operating Engineer servicing, operating and maintaining the following listed Class IV machinery; Small Air Compressors, Small Generators, Small Electric Winches, Welding Machines, and Sump Pumps four (4") inches or under, shall not be required to maintain more than a total of six (6) such machines of the same type. Small Electric Winches for which the total number maintained shall not be more than six (6). An employee shall not be required to service, operate and maintain more than a total of six (6) of the above listed machines in combination. When employees of the bargaining unit are employed to service operate and maintain mechanical heaters, or ground heaters such employees shall be required to service operate and maintain no more than a total of six (6) such heaters. Where a member of the bargaining unit is required to service operate and maintain more than a total of six (6) heaters, such employee shall be compensated at the Class I rate of pay negotiated for Crane Operators in this Agreement. Assignment of such machines shall not exceed a total of nine (9). An Engineer shall not be required on one (1) small heater of less than 250,000 B.T.U.

## SECTION 2 - SMALL CATEGORY EQUIPMENT ASSIGNMENT

A. In the event that the Employer uses not to exceed a total of four (4) of the following listed small Class IV equipment in any combination on a job site where members of the bargaining unit are employed by the Employer:

    1. Small pumps four inches (4") or under doing intermittent pumping;

    2. One welding machine;

<center>33</center>

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

    **3.** Single light plant (50kw and under);

    **4.** Four air cooled welding machines; and

    **5.** One similar piece of equipment.

A member of the bargaining unit shall be assigned and compensated at the rate of ONE DOLLAR ($1.00) per hour for the entire shift over and above the negotiated rate.

**B.** In the event an Employer uses any one of the following (B) 1, (B) 2, (B) 3 on a job site where members of the bargaining unit are employed by the Employer:

    1. One (1) air compressor of 350 c.f.m. or under;

    2. One (1) to nine (9) electric submersible pumps not to exceed three inches (3") each; and

    3. One (1) or two (2) four inch (4") electric submersible pumps.

A member of the bargaining unit shall be assigned and compensated at the rate of ONE DOLLAR ($1.00) per hour for the entire shift over and above the negotiated rate.

**C.** In the event that there are no members of the bargaining unit employed by the Employer on the job site, the Employer shall have the right to operate equipment as listed in any one (only) of the above listed **A.** - 1., 2., 3., 4., 5., or **B.** - 1., 2., or 3 until such time as members of the bargaining unit are employed by the Employer on the job site, but in no event is work coming within the jurisdiction of the bargaining unit to be permanently assigned to any other employee.

**D.** In the event an Employer uses a compressor (1) under 350 c.f.m. on a job site where member(s) of the bargaining unit are employed, a member of the bargaining unit shall be assigned and compensated at the rate of ONE DOLLAR ($1.00) per hour for the entire shift over and above the members negotiated rate.

**E.** In the event an Employer uses a compressor (1) over 350 c.f.m. on a job site where there are no members of the bargaining unit employed sub-section (d) above shall become inoperative and the Employer shall employ a member of the bargaining unit at the Class IV rate of pay listed in this Agreement.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

## SECTION 3 - ELECTRIC SUBMERSIBLE PUMPS - JOB SITES OR PROJECTS

**A.**     On a job site where more than nine (9) three inch (3") in diameter or less electric submersible pumps are being used, the Employer shall require a full time pump operator at the pump wage rate, to provide for the operation and maintenance of said pumps, during the entire regular daytime shift, Monday through Friday and on such other days as the regular daytime crew are conducting full scale job operations. No other Operator shall receive this additional pay. In the event of a breakdown in any pumps, the assigned Operator shall be subject to call at any time and any day to assist in the installation, servicing or removal and re-location of said pumps. In such breakdown case, the Employer shall notify the Operator by telephone to report to the job site if available for said duty. An employee shall not be required to operate and maintain more than a total of seventy-five inch (75") discharge.

When a discharge exceeds seventy-five inches (75"), or when the Combination of A & C does not apply, the Employer shall require a second full time pump Operator, Monday through Friday on the same basis as stated above. However, the Employer may assign the second pump operator to the second shift. It is further understood when the two (2) aforementioned pump Operators are employed the total inches of discharge may be increased to one hundred seventy-five inches (175").

When a discharge exceeds one hundred seventy-five inches (175"), the Employer shall require a third full time pump Operator, Monday through Friday on the same basis as stated above. However, the Employer may assign the third pump Operator to the third shift.

The conditions set forth herein for the first pump Operator is also applied to the second and third pump Operators respectively.

**B.**     In the event that the Employer uses electric submersible pumps three inches (3") in diameter or less not to exceed a total of nine (9) such pumps and a member of the bargaining unit is being utilized on the job site, the member shall be assigned to the pumps and shall be compensated at the rate of ONE DOLLAR ($1.00) per hour for the entire shift over and above the members negotiated rate of pay. An employee shall not be required to operate or maintain more than a total of fifteen inches (15") discharge.

35

**C.**     In the event the Employer uses one (1) or two (2) four inch (4") electric submersible pumps and a member of the bargaining unit is being utilized on the site, the member shall be assigned to the pumps and shall be compensated at the rate of ONE DOLLAR ($1.00) per hour for the entire shift over and above the members negotiated rate of pay.  An employee shall not be required to operate and maintain more than a total eight inch (8") discharge.

**D.**     In the event the Employer uses more than one (1) or two (2) four inch (4") electric submersible pump or any electric submersible pump larger than four inches (4") in diameter a full time pump Operator shall be required Monday through Friday on each shift when pumps are in operation and on such other days as the regular crew is conducting full scale job operations to provide for operation and maintenance of such pump or pumps.  An employee shall not be required to operate and maintain more than one hundred fifty inches (150") discharge.

**COMBINATION A & C**

An employee may be assigned to operate and maintain a combination of A & C pumps above. Such employee shall be compensated at the rate of ONE DOLLAR ($1.00) per hour for the entire shift over and above the negotiated pump rate of pay.

**COMBINATION D & B**

An employee may be assigned to operate and maintain a combination of D & B pumps above. Such employee shall be compensated at the rate of ONE DOLLAR ($1.00) per hour for the entire shift over and above the negotiated pump rate of pay.

## SECTION 4 - ELECTRIC SUBMERSIBLE PUMPS - TUNNELS, ETC.

The Employer shall require a full time pump Operator when B or C of Section 3 above is exceeded and the job or project is minus one hundred feet (100') in depth as per the specifications, bench mark, etc., to operate and maintain electric submersible pumps used on tunnels, shafts, and other underground enclosed work, during the entire daytime shift, Monday through Friday and on such other days as the regular daytime crew are conducting full scale job operations.  No other Operator shall receive this additional pay or be required on the other two shifts in the twenty-four (24) hour day except when the total pump discharge on the project exceeds thirty inches (30"). In

36

this case, a second pump man shall be assigned to the second shift, Monday through Friday and on such other days as the regular second shift crew is conducting full scale job operations.

In the event the total pump discharge on the project exceeds sixty inches (60") a third pump man shall be assigned to the third shift, Monday through Friday and on such other days as the regular third shift crew are conducting full scale job operations.

When pumps require IN LINE service and maintenance such work will be performed by the normal shift pump Operator. When pumps require repair or rebuilding, beyond normal warranty work, such work shall be the work of the mechanics.[9]

# ARTICLE XII

## HIRING

When an Employer performs work covered by this Agreement in the areas covered by Local Union No. 150, the following shall apply:

The Employer will obtain all employees used in the performance of such work through the Referral Offices of the Local Union in accordance with the non discriminatory provisions governing the operation of the Local Union's Referral Offices set out in the current effective Addendum No. 1 to this Agreement as is set forth in full herein. Furthermore, subsequent to referral and hire the Employer shall make and maintain all work assignments of preferred employees in full compliance with the provisions of said Addendum No. 1. Employer maintains the right to assignment of preferred employees to other assignments.

# ARTICLE XIII

## SECTION 1 – GRIEVANCE AND ARBITRATION

For the purpose of this Agreement, the term "grievance" is any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one or the other of the aforesaid persons or organization is violating or has violated this Agreement.

---

[4] See illustration and definition attached to the back of contract.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

**STEP 1.** A grievance shall first be taken up between the Union's Business Representative assigned to the job and a designated representative of the Employer. The Union must file the grievance within forty-five (45) days of the date of occurrence giving rise to the grievance or when the affected employee knew or reasonably should have known of the existence of the grievance. Grievances not filed within the forty-five (45) day period are deemed waived and are not subject to being processed through this procedure.

The liability shall be for one (1) year of the violation, verified by audit. Audit fees shall be paid for by the Company, along with a ten percent (10%) penalty payable to the Union. This one (1) year limitation on liability shall not apply to grievances for unpaid fringe benefits.

**STEP 2.** In the event the grievance cannot be resolved within seven (7) working days of the STEP ONE conference, it shall be reduced to writing and referred for conference and resolution by designated officials of the Union and the Contractor at a pre-grievance hearing to be held at the office of Local 150, 6200 Joliet Road, Countryside, Illinois 60525, unless another location or teleconference is mutually agreed to.

**STEP 3.** In the event the grievance cannot be resolved by STEP TWO, the written grievance shall be submitted within fifteen (15) days to the Joint Grievance Committee created in this Article.

The Union and Association have together created a Joint Grievance Committee to resolve grievances arising under this Agreement. This Committee shall consist of an equal number of members representing Employers and the Union. The Union or Association may appoint alternate members. The Joint Grievance Committee may adopt procedural rules which shall be binding upon all parties to the Joint Grievance Committee proceedings.

The Joint Grievance Committee shall have the power to resolve all grievances before it and shall have the right to examine all records of the Employers and employees as is reasonably necessary to resolve the grievance. The Joint Grievance Committee shall have the authority to determine and assess remedies for violations of this Agreement, including, but not limited to an award of back pay and equivalent benefits to a fund designated by Local 150. The Joint Grievance Committee or the Arbitrator may decide questions of both procedural and substantive arbitrability.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

There will be a "cap" of $50,000.00 placed on the monetary relief or remedy that can be awarded by the JGC for any grievance. Any grievance seeking more than $50,000.00 that is not resolved at Steps 1 or 2 of the grievance procedure may be submitted by the grieving party directly to Step 4 (neutral arbitration) after Step 2 within 30 days after the Step 2 meeting.

If a grievance is submitted to be heard by the JGC at Step 3, a "cap" of $50,000.00 shall be the maximum monetary relief that can be granted *in toto* by the JGC without regard to whether the grievance involves claims on behalf of multiple grievants, or seeks relief measured by back pay and benefits due multiple Union members, or presents continuing violation claims.

Grievances processed directly to Step 4 from Step 2 shall not be affected by or limited to the "cap" amount as potential monetary relief at arbitration.

Where the Joint Grievance Committee, by majority vote, resolves a grievance, no appeal may be taken and such resolution shall be final and binding on all parties and individuals bound by this Agreement.

**STEP 4.** If the Joint Grievance Committee is unable to resolve a grievance by majority vote, the grievance may be submitted within thirty (30) days to a neutral arbitrator. If the Joint Grievance Committee is unable to resolve the grievance, the Employer shall be required to either post a bond or deposit into an escrow account designated by the Union $25,000.00 (representing a potential award of attorney fees and costs) plus the amount claimed in the grievance within fourteen days (14) of the date of the Joint Grievance Committee hearing. If the Employer fails to either post a bond or deposit the required amount into the escrow account within fourteen (14) days the Union shall have the right to resort to all legal and economic remedies, including the right to strike and picket until grievance has been resolved by arbitrator or fully remedied through a signed settlement agreement between the parties. If there are multiple grievances between the Union and a single Employer which relate to the same provision of the Agreement, the maximum aggregate amount that Employer shall be required to post a bond for or deposit into an escrow account shall be $250,000.00 for the grievances related to that provision of the Agreement. If the Union and the Association or the Employer, as the case may be, cannot agree on an arbitrator, then an arbitrator shall be selected in accordance with the rules and procedures of the American Arbitration Association. The cost of such an arbitrator shall be borne by the

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

losing party. In addition, the prevailing party (as defined below) shall be awarded its reasonable attorney's fees and costs not to exceed $25,000.00.

If a grievance proceeds directly to Step 4 from Step 2 under this letter, the losing party at arbitration shall pay the prevailing party's reasonable attorneys' fees and costs, not to exceed $25,000.00 *in toto*. Documentation of such fee and cost expenditures must be provided upon request.

If a grievance proceeds directly to Step 4 from Step 2 under this letter, the losing party at arbitration shall also be responsible for payment of both its share and the prevailing party's share of the arbitrator's and court reporter's fees and expenses.

For purposes of this provision, the term "prevailing party" in a grievance claiming monetary relief exceeding $50,000.00 shall mean a final award issued by an arbitrator sustaining the grievance in full and awarding at least 70% of the requested monetary relief.

If an award issues in favor of the grieving party on some but fewer than all of the claims presented to the arbitrator, there can be no shifting of fees or costs for that portion of the grievance which is denied by the arbitrator.

If the monetary relief awarded by the arbitrator to the grieving party is at less than the 70% threshold, the parties shall bear their own attorneys' fees and costs, and split equally the arbitrator's and court reporter's fees and expenses.

If the grievance is denied in full by the arbitrator, the grieved party shall be the "prevailing party" and shall receive fees and costs per the provisions set forth above.

The time limits provided in this Section may be extended by mutual written consent of the Union and the Association and/or the Employer or at the discretion of the Joint Grievance Committee.

Neither the Joint Grievance Committee nor an arbitrator shall have any authority to add to, detract from, or in any way alter the provisions of this Agreement or make a new Agreement.

Decisions of the Joint Grievance Committee and Arbitration Awards shall be complied with within seven (7) days of receipt of the decision by the losing party. A party which fails to comply with the seven (7) day period shall be required to pay an additional ten percent (10%) of the amounts as owed as liquidated damages for failure to comply with the decision or award. In

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party. There shall be no lockout by an Employer during the term of this Agreement. Except as provided above or in Article XVIII, Sections 1 and 2 and 4 of this Agreement, there shall be no strikes or work stoppages by the Union during the term of this Agreement.

## SECTION 2 - JURISDICTIONAL AWARD

Unless determined by Jurisdictional Award as hereinafter set forth, all work that has been heretofore performed under agreement or by custom or by area practice with any other local organization shall continue to be so performed until such Jurisdictional Award is made. Whenever a jurisdictional dispute shall arise between local labor organizations, the provisions of this Agreement shall prevail until a Jurisdictional Award has been made by the proper Jurisdictional Board of International Unions of which the local disputing Labor Organizations are members or Labor Board or Project Labor Agreements to which the Union is signatory. The Employer agrees to abide by such Jurisdictional Award, but there shall be no work stoppage while the settlement of the dispute is pending. It is further agreed that the Employer will abide by such mutual agreement reached between the Local Union and other Local Unions and the International Union, including, but not limited to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry.

## ARTICLE XIV

### JOB STEWARD

The job steward shall be selected by the Union from among the members of the bargaining unit employed at the job site at the time of selection. The job steward shall be a working employee. The Union shall have the right to designate which employee shall be the steward or acting steward. The job steward shall have no special employment priority or security. In case of any minor difficulty, the steward shall be permitted reasonable time to adjust same without pay deduction.

41

# ARTICLE XIV

## JOB STEWARD

The job steward shall be selected by the Union from among the members of the bargaining unit employed at the job site at the time of selection. The job steward shall be a working employee. The Union shall have the right to designate which employee shall be the steward or acting steward. The job steward shall have no special employment priority or security. In case of any minor difficulty, the steward shall be permitted reasonable time to adjust same without pay deduction.

# ARTICLE XV

## SECTION 1 - WAGE RATES AND FRINGE BENEFITS[5]

The wage rates and fringe benefits for the respective classifications set forth below shall be effective on the dates indicated:

| FRINGE BENEFITS | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| HEALTH AND WELFARE | $16.75 | $17.25 | $17.80 |
| RETIREE MEDICAL SAVINGS PLAN | $4.65 | $4.90 | $5.15 |
| PENSION | $15.05 | $15.50 | $16.00 |
| RETIREMENT ENHANCEMENT FUND | $3.55 | $3.80 | $4.05 |
| VACATION SAVINGS | $2.00 | $2.00 | $2.00 |
| APPRENTICESHIP AND SKILL IMPROVEMENT FUND | $2.40 | $2.55 | $2.70 |
| INDUSTRY ADVANCEMENT FUND AND CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $1.45 | $1.58 | $1.68 |

42

**CITY OF CHICAGO CRANE LICENSE RATES**
**LOCAL 150 ADVANCED CRANE CERTIFICATION**

| | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| CRAFT FOREMAN | $55.80 | $57.30 | $58.80 |
| A/D Director | $55.80 | $57.30 | $58.80 |
| [10] Certified Friction Crane Operator - Field Mechanics and Field Welders | $54.80 | $56.30 | $57.80 |
| [10] Certified Crane Operator requiring an Oiler | $53.80 | $55.30 | $56.80 |
| [10] All Other Certified Crane Operators Requiring No Oiler | $53.80 | $55.30 | $56.80 |
| Dowell Machine with Air Compressor | $52.80 | $54.30 | $55.80 |
| Certified Finish Blade | $53.80 | $55.30 | $56.80 |
| Certified Dozer | $53.80 | $55.30 | $56.80 |
| Certified Track Excavator | $53.80 | $55.30 | $56.80 |
| [11] GRADALL and machines of like nature | $52.80 | $54.30 | $55.80 |

---

[10] City of Chicago Crane License and/or Local 150 Advanced Crane Certification.
[11] Requires Oiler pursuant to Article VIII

43

| CLASS I | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| [12]ASPHALT PLANT | $51.80 | $53.30 | $54.80 |
| ASPHALT HEATER AND PLANER COMBINATION | $51.80 | $53.30 | $54.80 |
| [12]ASPHALT HEATER SCARFIRE | $51.80 | $53.30 | $54.80 |
| ASPHALT SPREADER | $51.80 | $53.30 | $54.80 |
| [12]AUTOGRADER/GOMACO or other similar type machines | $51.80 | $53.30 | $54.80 |
| [12]ABG PAVER | $51.80 | $53.30 | $54.80 |
| [12]BACKHOES with Caisson attachment | $51.80 | $53.30 | $54.80 |
| BALLAST REGULATOR | $51.80 | $53.30 | $54.80 |
| [12]BELT LOADER | $51.80 | $53.30 | $54.80 |
| [12]CAISSON RIGS | $51.80 | $53.30 | $54.80 |
| CAR DUMPER | $51.80 | $53.30 | $54.80 |
| [12]CENTRAL REDI-MIX PLANT | $51.80 | $53.30 | $54.80 |
| COMBINATION BACKHOE FRONT ENDLOADER MACHINE (1 cu. yd. backhoe bucket or over or with attachments) | $51.80 | $53.30 | $54.80 |
| [12]CONCRETE BREAKER (Truck Mounted) | $51.80 | $53.30 | $54.80 |
| CONCRETE CONVEYOR | $51.80 | $53.30 | $54.80 |
| [12]CONCRETE PAVER Over 27E cu. Ft. | $51.80 | $53.30 | $54.80 |
| [12]CONCRETE PLACER | $51.80 | $53.30 | $54.80 |
| CONCRETE TUBE FLOAT | $51.80 | $53.30 | $54.80 |

[12] Requires Oiler

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

| CLASS I | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| [11]CRANES, ALL ATTACHMENTS (NON CERTIFIED) | $51.80 | $53.30 | $54.80 |
| [12]CRANES, TOWER of all types | $51.80 | $53.30 | $54.80 |
| CRETER CRANE | $51.80 | $53.30 | $54.80 |
| SPIDER CRANE | $51.80 | $53.30 | $54.80 |
| CRUSHER, STONE, ETC. | $51.80 | $53.30 | $54.80 |
| DERRICKS, ALL | $51.80 | $53.30 | $54.80 |
| DERRICK BOATS | $51.80 | $53.30 | $54.80 |
| [12]DERRICKS, TRAVELING | $51.80 | $53.30 | $54.80 |
| [12] DREDGES | $51.80 | $53.30 | $54.80 |
| [12] DRILLS ALL | $51.80 | $53.30 | $54.80 |
| ELEVATORS, OUTSIDE TYPE RACK & PINION AND SIMILAR MACHINES | $51.80 | $53.30 | $54.80 |
| [11]FORMLESS CURB AND GUTTER MACHINE | $51.80 | $53.30 | $54.80 |
| GRADER, ELEVATING | $51.80 | $53.30 | $54.80 |
| GRADER, MOTOR GRADER, MOTOR PATROL AUTO PATROL, FORM GRADER, PULL GRADER, SUBGRADER | $51.80 | $53.30 | $54.80 |

[11] Requires Oiler pursuant to Article VIII
[12] Requires Oiler

45

| CLASS I | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| [12]GUARD RAIL POST DRIVER TRUCK MOUNTED | $51.80 | $53.30 | $54.80 |
| HOISTS, ONE, TWO, & THREE DRUM | $51.80 | $53.30 | $54.80 |
| HEAVY DUTY SELF-PROPELLED TRANSPORTER OR PRIME MOVER | $51.80 | $53.30 | $54.80 |
| [11]HYDRAULIC BACKHOES | $51.80 | $53.30 | $54.80 |
| [11]BACKHOES WITH SHEAR ATTACHMENTS (up to 40' of boom reach, and an additional THREE CENTS ($0.03) per foot thereafter) | $51.80 | $53.30 | $54.80 |
| LUBRICATION TECHNICIAN | $51.80 | $53.30 | $54.80 |
| [13]MANIPULATORS | $51.80 | $53.30 | $54.80 |
| MUCKING MACHINE | $51.80 | $53.30 | $54.80 |
| [11]PILE DRIVERS AND SKID RIG | $51.80 | $53.30 | $54.80 |
| PRE-STRESS MACHINE | $51.80 | $53.30 | $54.80 |
| [12]PUMP CRETES DUAL RAM (requires frequent lubrication and water) | $51.80 | $53.30 | $54.80 |
| [12]ROCK DRILL-CRAWLER OR SKID RIG | $51.80 | $53.30 | $54.80 |

[11] Requires Oiler pursuant to Article VIII
[12] Requires Oiler
[13] These wage classifications become effective June 1, 2007 and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

| CLASS I | 6/1/20 | 6/1/21 | 6/1/22 |
|---|---|---|---|
| [12]ROCK DRILL-TRUCK MOUNTED | $51.80 | $53.30 | $54.80 |
| ROCK/TRACK TAMPER | $51.80 | $53.30 | $54.80 |
| [12]ROTO MILL GRINDER (36" and over) | $51.80 | $53.30 | $54.80 |
| ROTO MILL GRINDER (less than 36") | $51.80 | $53.30 | $54.80 |
| [12]SLIP-FORM PAVER | $51.80 | $53.30 | $54.80 |
| SNOW-MELTERS | $51.80 | $53.30 | $54.80 |
| [12]SOIL TEST DRILL RIG (Truck Mounted) | $51.80 | $53.30 | $54.80 |
| STRADDLE BUGGIES | $51.80 | $53.30 | $54.80 |
| HYDRAULIC TELESCOPING FORM (tunnel) | $51.80 | $53.30 | $54.80 |
| [12] TIEBACK MACHINE | $51.80 | $53.30 | $54.80 |
| [12] TRACTOR DRAWN BELT LOADER | $51.80 | $53.30 | $54.80 |
| TRACTOR DRAWN BELT LOADER with attached pusher (two engineers) | $51.80 | $53.30 | $54.80 |
| TRACTOR WITH BOOM | $51.80 | $53.30 | $54.80 |
| TRACTAIRE WITH ATTACHMENTS | $51.80 | $53.30 | $54.80 |
| [12]TRAFFIC BARRIER TRANSFER MACHINE | $51.80 | $53.30 | $54.80 |

[11] Requires Oiler pursuant to Article VIII
[12] Requires Oiler/Helper

47

| CLASS I | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| [11] TRENCHING | $51.80 | $53.30 | $54.80 |
| TRUCK MOUNTED CONCRETE PUMP with boom | $51.80 | $53.30 | $54.80 |
| [14] RAISED OR BLIND HOLE DRILLS (tunnel shaft) | $51.80 | $53.30 | $54.80 |
| [12] UNDERGROUND BORING and/or MINING MACHINES 7 ft. in diameter and over tunnel, etc. | $51.80 | $53.30 | $54.80 |
| UNDERGROUND BORING and/or MINING MACHINES under 7 ft. | $51.80 | $53.30 | $54.80 |
| [12] WHEEL EXCAVATOR | $51.80 | $53.30 | $54.80 |
| WIDENER (Apsco) | $51.80 | $53.30 | $54.80 |

[11] Requires Oiler pursuant to Article VIII
[12] Requires Oiler
[14] To be manned pursuant to the letter dated May 2, 1977

48

| CLASS II | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| [12]BATCH PLANT | $51.25 | $52.75 | $54.25 |
| BITUMINOUS MIXER | $51.25 | $52.75 | $54.25 |
| BOILER AND THROTTLE VALVE | $51.25 | $52.75 | $54.25 |
| BULLDOZERS | $51.25 | $52.75 | $54.25 |
| CAR LOADER TRAILING CONVEYORS | $51.25 | $52.75 | $54.25 |

[12]Requires Oiler

| CLASS II | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| COMBINATION BACKHOE FRONT ENDLOADER MACHINE (less than 1 cu. yd. backhoe bucket or over with attachments) | $51.25 | $52.75 | $54.25 |
| COMPRESSOR AND THROTTLE VALVE | $51.25 | $52.75 | $54.25 |
| COMPRESSOR, Common Receiver (3) | $51.25 | $52.75 | $54.25 |
| CONCRETE BREAKER OR HYDRO-HAMMER | $51.25 | $52.75 | $54.25 |
| CONCRETE GRINDING MACHINE | $51.25 | $52.75 | $54.25 |
| CONCRETE MIXER OR PAVER 7S series to and including 27 cu.ft. | $51.25 | $52.75 | $54.25 |
| CONCRETE SPREADER | $51.25 | $52.75 | $54.25 |
| CONCRETE CURING MACHINE Burlap machine, Belting machine and Sealing machine | $51.25 | $52.75 | $54.25 |

49

| CLASS II | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| CONCRETE WHEEL SAW | $51.25 | $52.75 | $54.25 |
| CONVEYOR MUCK CARS (Haglund or similar type) | $51.25 | $52.75 | $54.25 |
| DRILLS, (all) | $51.25 | $52.75 | $54.25 |
| FINISHING MACHINE - Concrete | $51.25 | $52.75 | $54.25 |
| HIGHLIFT SHOVELS or FRONT ENDLOADER | $51.25 | $52.75 | $54.25 |
| HOIST-SEWER DRAGGING MACHINE | $51.25 | $52.75 | $54.25 |

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

| CLASS II | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| HYDRAULIC BOOM TRUCKS (all attachments) | $51.25 | $52.75 | $54.25 |
| HYDRO-BLASTER(requires two operators) | $51.25 | $52.75 | $54.25 |
| [15]HYDRO VACUUM, HYDRO EXCAVATION (AND SIMILAR EQUIPMENT) | $51.25 | $52.75 | $54.25 |
| [16]LASER SCREED | $51.25 | $52.75 | $54.25 |
| ALL LOCOMOTIVES, DINKY | $51.25 | $52.75 | $54.25 |
| [16]OFF-ROAD HAULING UNITS (including articulating) | $51.25 | $52.75 | $54.25 |
| [17]NON SELF-LOADING EJECTION DUMP | $51.25 | $52.75 | $54.25 |
| PUMP CRETES: Squeeze cretes - screw type pumps, Gypsum Bulker and pump | $51.25 | $52.75 | $54.25 |
| ROLLER, ASPHALT | $51.25 | $52.75 | $54.25 |
| ROTORY SNOW PLOWS | $51.25 | $52.75 | $54.25 |
| ROTOTILLER, SEAMAN, etc. Self-propelled | $51.25 | $52.75 | $54.25 |
| SELF-PROPELLED - COMPACTOR | $51.25 | $52.75 | $54.25 |
| SPREADER–CHIP-STONE, etc. | $51.25 | $52.75 | $54.25 |
| SCRAPER – SINGLE /TWIN ENGINE, PUSH AND PULL | $51.25 | $52.75 | $54.25 |

[16] These wage classifications become effective June 1, 1995, and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

[17] These wage classifications become effective June 1, 2001, and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150

[15] All additional forces assigned to HYDRO VACUUM, HYDRO EXCAVATION (AND SIMILAR EQUIPMENT) shall be members of the bargaining unit, unless the individual Employer has an established practice of using a member of another craft as the helper/laborer that pre-dates the effective date of this Agreement.

| **CLASS II** | **6/1/21** | **6/1/22** | **6/1/23** |
|---|---|---|---|
| SCRAPER - prime mover in tandem (regardless of size) (Add $1.00 to Class II hourly rate for each hour and for each pan attached thereto. | $51.25 | $52.75 | $54.25 |
| TRACTORS PULLING ATTACHMENTS Sheeps foot, Disc, Compactor, etc. | $51.25 | $52.75 | $54.25 |
| TUG BOATS | $51.25 | $52.75 | $54.25 |
| MECHANIC-WELDERS working in a permanent shop. Such mechanics when working as Field Mechanics shall receive the Field Mechanics rate of pay for the entire day. (This clause shall not apply to work performed within the construction area). | $51.25 | $52.75 | $54.25 |

| CLASS III | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| BOILERS | $49.20 | $50.70 | $52.20 |
| BROOMS, ALL POWER PROPELLED | $49.20 | $50.70 | $52.20 |
| CEMENT SUPPLY TENDER | $49.20 | $50.70 | $52.20 |
| COMPRESSOR, Common Receiver (2) | $49.20 | $50.70 | $52.20 |
| CONCRETE MIXER(Two bag and over) | $49.20 | $50.70 | $52.20 |

53

| CLASS III | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| CONVEYOR, PORTABLE | $49.20 | $50.70 | $52.20 |
| FARM-TYPE TRACTORS used for mowing, seeding, etc. | $49.20 | $50.70 | $52.20 |
| FORKLIFT TRUCKS | $49.20 | $50.70 | $52.20 |
| GROUTING MACHINE | $49.20 | $50.70 | $52.20 |
| HOISTS, AUTOMATIC | $49.20 | $50.70 | $52.20 |
| HOISTS, ALL ELEVATORS | $49.20 | $50.70 | $52.20 |
| HOISTS, TUGGER SINGLE DRUM | $49.20 | $50.70 | $52.20 |
| JEEP DIGGERS | $49.20 | $50.70 | $52.20 |
| [16]LOW BOYS | $49.20 | $50.70 | $52.20 |
| PIPE JACKING MACHINES | $49.20 | $50.70 | $52.20 |
| POST-HOLE DIGGER | $49.20 | $50.70 | $52.20 |
| POWER SAW, CONCRETE, Power Driven | $49.20 | $50.70 | $52.20 |
| PUG MILLS | $49.20 | $50.70 | $52.20 |
| ROLLERS, other than asphalt | $49.20 | $50.70 | $52.20 |

[16]These wage classifications become effective June 1, 1995, and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

54

| **CLASS III** | **6/1/21** | **6/1/22** | **6/1/23** |
|---|---|---|---|
| SEED AND STRAW BLOWER | $49.20 | $50.70 | $52.20 |
| STEAM GENERATORS | $49.20 | $50.70 | $52.20 |
| STUMP MACHINE | $49.20 | $50.70 | $52.20 |
| WINCH TRUCK with "A" Frame | $49.20 | $50.70 | $52.20 |
| WORK BOATS | $49.20 | $50.70 | $52.20 |
| TAMPER-form-motor driven | $49.20 | $50.70 | $52.20 |

| **CLASS IV** | **6/1/21** | **6/1/22** | **6/1/23** |
|---|---|---|---|
| AIR COMPRESSOR - small 350 and under (1 to 5 not to exceed a total of 300 ft.) | $47.80 | $49.30 | $50.80 |
| AIR COMPRESSOR – large over 350 | $47.80 | $49.30 | $50.80 |
| COMBINATION - Small Equipment Operator | $47.80 | $49.30 | $50.80 |
| DIRECTIONAL BORING MACHINE | $47.80 | $49.30 | $50.80 |
| GENERATORS - Small 50kw and under | $47.80 | $49.30 | $50.80 |
| GENERATORS – Large over 50 kw | $47.80 | $49.30 | $50.80 |
| HEATERS, All | $47.80 | $49.30 | $50.80 |

55

| CLASS IV | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| HYDRAULIC POWER UNIT (pile driving, extracting, or drilling) | $47.80 | $49.30 | $50.80 |
| LIGHT PLANTS, all (1 through 5) | $47.80 | $49.30 | $50.80 |
| PUMPS, over 3" (1 to 3 not to exceed a total of 300 ft.) | $47.80 | $49.30 | $50.80 |
| [18] PIPE FUSION MACHINE | $47.80 | $49.30 | $50.80 |
| [19]PUMPS, WELL POINT SYSTEMS | $47.80 | $49.30 | $50.80 |
| [18] VACUUM TRUCKS | $47.80 | $49.30 | $50.80 |
| WELDING MACHINES (2 through 5) | $47.80 | $49.30 | $50.80 |
| WINCHES, 4 small electric drill winches | $47.80 | $49.30 | $50.80 |

[19]An Operating Engineer operating and maintaining and servicing a Well Point System.
[18] These wage classifications become effective June 1, 2010, and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

| CLASS V | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| SKIDSTEER LOADER (all) | $46.60 | $48.10 | $49.60 |
| BRICK FORKLIFTS | $46.60 | $48.10 | $49.60 |
| OILER/HELPER | $46.60 | $48.10 | $49.60 |
| [16] DIRECTIONAL BORING MACHINE LOCATOR | $46.60 | $48.10 | $49.60 |

[16]These wage classifications become effective June 1, 1995, and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

| WINTER MAINTENANCE WORK | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| MAINTENANCE work done in shop or yard, excluding Master Regular Mechanics, during period from December 1 to March 31 | $47.35 | $48.85 | $50.35 |

**HAZMAT PAY**

| Level A | Add $3.25 to Classification |
|---|---|
| Level B | Add $2.25 to Classification |
| Level C | Add $1.25 to Classification |

57

## SECTION 2 – FRINGE BENEFITS

**FRINGE BENEFITS FOR FIRST AND SECOND YEAR APPRENTICES**

| FRINGE BENEFITS | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| HEALTH AND WELFARE | $16.75 | $17.25 | $17.80 |
| RETIREE MEDICAL SAVINGS PLAN | $4.65 | $4.90 | $5.15 |
| PENSION | $13.50 | $13.95 | $14.45 |
| RETIREMENT ENHANCEMENT FUND | $3.55 | $3.80 | $4.05 |
| VACATION SAVINGS | $1.25 | $1.25 | $1.25 |
| APPRENTICESHIP AND SKILL IMPROVEMENT FUND | $2.40 | $2.55 | $2.70 |
| INDUSTRY ADVANCEMENT FUND AND CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $1.45 | $1.58 | $1.68 |

58

**FRINGE BENEFITS FOR THIRD AND FOURTH YEAR APPRENTICES**

| FRINGE BENEFITS | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| HEALTH AND WELFARE | $16.75 | $17.25 | $17.80 |
| RETIREE MEDICAL SAVINGS PLAN | $4.65 | $4.90 | $5.15 |
| PENSION | $15.05 | $15.50 | $16.00 |
| RETIREMENT ENHANCEMENT FUND | $3.55 | $3.80 | $4.05 |
| VACATION SAVINGS | $2.00 | $2.00 | $2.00 |
| APPRENTICESHIP AND SKILL IMPROVEMENT FUND | $2.40 | $2.55 | $2.70 |
| INDUSTRY ADVANCEMENT FUND AND CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $1.45 | $1.58 | $1.68 |

59

**WAGES FOR APPRENTICES**

|  | 6/1/21 | 6/1/22 | 6/1/23 |
|---|---|---|---|
| First Year | $26.95 | $27.70 | $28.50 |
| Second Year | $33.70 | $34.65 | $35.65 |
| First half of Third Year | $38.85 | $40.00 | $41.10 |
| Second half of Third Year | $41.45 | $42.65 | $43.85 |
| First half of Fourth Year | $44.05 | $45.30 | $46.60 |
| Second half of Fourth Year | $47.65 | $49.05 | $50.40 |

At the end of the fourth year, apprentices shall become Journeymen Engineers and shall be paid pursuant to the terms of the wage classifications set forth in this Agreement.

In no event shall the rate of pay for apprentices exceed that rate provided for the classification of machine the apprentice may be operating as contained in Article XV of this Agreement.

Apprentices shall be paid according to the Apprenticeship Introduction Slip issued to the Employer and the Apprentice at the time the apprentice is dispatched by the Union to the Employer.

The Introduction Slip must indicate the progress status of the apprentice. As the apprentice progresses in status, he shall be paid pursuant to the rates set forth in this Agreement.

In addition to the above provisions for rates of pay, fringe benefit contributions shall be as provided for in this Agreement covering work being performed by said apprentices.

60

**ESTABLISHMENT OF JOINT LABOR MANAGEMENT COMMITTEE FOR CERTIFICATION / TRAINING / TESTING DATA BASE**

The Parties agree to establish a Labor Management Committee to develop and implement a program whereby Operating Engineers will be certified as being competent to operate most of the types of equipment covered by this Agreement. The Labor Management Committee created under this provision shall establish the standards and criteria for certification of competency. The Labor Management Committee will have the authority to add new equipment to the certified Operator list, when mutually agreed to. The wage rate for all additional certified classifications will be TWO DOLLARS ($2.00) per hour over the regular hourly rate.

A website will be developed and implemented to validate testing and training of the bargaining unit members.

## ARTICLE XVI- FRINGE BENEFITS

**SECTION 1.** Except where expressly noted, when the phrase "the Funds" is used in this Agreement, it means any and all fringe benefit funds or plans referenced in this Agreement including the Midwest Operating Engineers Health and Welfare Fund, the Retiree Medical Savings Plan, the Midwest Operating Engineers Pension Trust Fund (a/k/a "Pension Fund"), the Midwest Operating Engineers Retirement Enhancement Fund, the Local 150 I.U.O.E. Vacation Savings Plan (a/k/a "Vacation Savings"), Operating Engineers Local 150 Apprenticeship and Skill Improvement Fund, and the Midwest Operating Engineers Industry Advancement Fund and Construction Industry Research and Service Trust Fund (a/k/a "CRF").

**SECTION 2.** The Employer shall pay contributions to each of the Funds at the rate required by the Wages and Fringe Benefits provision of this Agreement per hour for each hour for which the employee receives wages under the terms of this Agreement except that the Employer shall pay contributions on behalf of Apprentice employees according to the schedule in Article XV, Section 2, the Employer shall pay contributions to all of the Funds on behalf of Supervisors, as further described below, and the Employer shall pay contributions to all Funds except Vacation Savings on behalf of owner/operators and relatives, as further described below Contributions to the Funds shall not constitute or be deemed wages due to the employee.

61

**SECTION 3.** All the Funds except CRF maintain a place of business at 6150 Joliet Road, Countryside, Illinois 60525, or at such other place designated by the Trustees. The Employer shall pay contributions to the Funds through Automated Clearing House (ACH) or any mechanism duly designated by the Trustees, at the Trustees' option. The Trustees may require the Employer to use ACH, or any other mechanism duly designated by the Trustees to pay liquidated damages, interest, or any other sums owed to the Funds.

The Employer shall also submit its contribution reports via I-Remit, or any mechanism duly designated by the Trustees at the Trustees' option. Where the Employer fails to utilize the Trustees' designated reporting mechanism, the Funds may charge the Employer a fee set by the Trustees to compensate the Funds for additional costs associated with non-compliance and such fee is subject to collection in any suit brought by the Funds. The contribution reports must be completed as required by the Trustees.

The reports and payments are due not later than the tenth (10th) day of the following month. If payment for contributions is not received by the Funds by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreements and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection.

**SECTION 4.** It is understood and agreed that the Employer shall be bound to the terms and provisions of the Agreements and Declaration of Trust of each of the Funds, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein. Each Employer bound hereby irrevocably appoints as his representative on the Board of Trustees as are named in the Agreement and Declaration of Trust as Employer Trustees and their successors duly appointed as therein set forth.

**SECTION 5.** The parties recognize that individuals employed by the Employer may receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when an employee performs bargaining unit work and that employee is: a shareholder, officer, managing member, and/or director of the Employer

62

("owner/operator") or; a relative (father, mother, son, daughter, brother, sister, husband, wife, in-law) of a shareholder, officer, managing member, and/or director of the Employer, the Employer shall:

(a) With respect to each of the Funds except the Midwest Operating Engineers Health and Welfare Fund and Local 150 I.U.O.E. Vacation Savings Plan, report and pay at the hourly rate for each owner/operator and relative one hundred twenty (120) hours per month, twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month. The Employer may elect to report on the basis of actual hours worked per month provided the hours reported are in excess of one hundred twenty (120) hours each month. The hourly rate is the appropriate rate contained in the Wage Rates and Fringe Benefits section of this Agreement.

(b) With respect to the Midwest Operating Engineers Health and Welfare Fund, pay the required monthly contribution amount (also known as a "premium") associated with the benefit plan for each such employee. The premium amount is set by the Welfare Fund Trustees.

If the Employer fails to make contributions on behalf of an owner/operator or relative, it is understood and agreed that the affected individual is not entitled to the receipt of benefits.

Corporate officers and their children will be exempt from this provision when they operate equipment doing bargaining unit work during an emergency such as fire, flood or to save life or property.

Anything herein contained to the contrary notwithstanding, an Employer required to make contributions on behalf of a "Supervisor" shall make contributions on the basis of one hundred sixty-eight (168) hours each month. The Employer may elect to report on the basis of actual hours worked per month provided the hours reported are in excess of one hundred sixty-eight (168) hours each month.

The exemptions provided herein do not relieve the Employer from the obligations of Article IX, Section 3 Regular Assigned Engineers of this Agreement.

63

During the term of this Agreement, if the trustees of the Midwest Operating Engineers Health and Welfare Fund determine that the cost of providing Welfare Fund Benefits to owner-operators or relatives exceeds the total contributions made on their behalf, the parties agree to meet in order for the Midwest Operating Engineers Health and Welfare Fund to explain the reasoning for its increase to the contribution requirement of this provision. Any such meetings and bargaining will not be considered a reopening of the contract for any purpose and all other provisions of the Agreement shall remain in force and effect through the term of the Agreement.

**SECTION 6. FAMILY AND MEDICAL LEAVE ACT (FMLA)** –the Employer of any employee who is eligible for and requests leave under the Family and Medical Leave Act (FMLA) shall promptly notify the Health and Welfare Fund Office, and before the leave commences, if possible. Employers shall make Health and Welfare contributions for any employee who is taking leave under the FMLA on the basis of forty (40) hours per week.

**SECTION 7.** In computing the amounts due for Vacation Savings, the Employer is required to add the amount per hour to the employee's gross wages and then deduct the Social Security and Withholding tax from the gross figure on each check. The full amount shall then be set aside for remittance to the Vacation Savings.

**SECTION 8.** The Employer further agrees to be bound by the terms of the Apprenticeship Standards established by the Joint Apprenticeship Training Committee of the Northern Illinois and Northern Indiana Apprenticeship and Skill Improvement Program, as approved by the United States Department of Labor, Bureau of Apprenticeship Training.

**SECTION 9.** It is understood and agreed that the Administrator of the remaining Funds will administer the collection and distribution of the CRF contributions and will receive a reasonable fee for that service, subject to approval of the Trustees of the CRF. Of the CRF contributions, TWELVE CENTS ($0.12) per hour for each hour for which contributions are made will be distributed to the Association participating in this Agreement; and ONE CENT ($0.01) per hour for each hour for which contributions are made will be distributed to the Construction Industry Service Corporation ("CISCO"), a not-for-profit corporation. The remaining amount per hour, for each hour for which contributions are made will be distributed

64

by the CRF Trustees in accordance with the power and authority granted to them in the applicable CRF Agreement and Declaration of Trust.

Anything herein contained to the contrary notwithstanding, there is specifically excluded from the purposes of the CRF and/or any of the entities to which it distributes contributions, the right to use any of its funds for lobbying in support of anti-labor legislation and/or to subsidize contractors during a period of work stoppage or strikes. CISCO and all other recipients of CRF funds shall report annually to the CRF, giving a complete review of their activities and the activities of any of their members, including a certified audit showing the CRF disbursements. The CRF shall report annually to Local 150, IUOE, giving a complete review of its activities and a certified audit showing the Fund disbursements. Said review and audit to be furnished no later than May 1st of each year.

The administration of this Fund shall be solely in the hands of the CRF and no Employer shall pay or deliver any funds to any representative of his employees. The Fund and the Trustees thereof agree to indemnify and hold harmless the Union, its officers, agents, representatives and members from any claim, suit, cause of action, or otherwise as regards a creation of the Fund, its administration or any act or action in connection therewith, and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

The Association agrees to indemnify and hold harmless the Union, its Officers, Agents, Representatives and Members from any claim, suit, cause of action, or otherwise as regards the collection and transmission of Industry Advancement Fund collections.

## ARTICLE XVII

## A. DUES CHECK OFF

Upon receipt of a written check off authorization form from an employee, the Employer agrees to deduct each week the applicable initiation fees and monthly dues uniformly required for obtaining and maintaining membership in the Union from the pay of each employee covered by this

65

Agreement and shall remit the same to the Union, no later than the tenth (10th) day of each month, together with an itemized statement of such deductions. No deductions shall be made which are prohibited by applicable law. Payments accompanied by monthly reports on forms provided shall be submitted to the Midwest Operating Engineers Fringe Benefit Fund, 6150 Joliet Road, Countryside, Illinois 60525. Report forms are available at the above address.

However, if payment is not received by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement, and the Union shall be entitled for all contributions due, liquidated damages, interest, and any other cost of collections.

It is the intention of the parties that such deductions shall comply with the requirements of the Section 302(c) (4) of the Labor Management Relations Act of 1947, as amended, and that such deductions shall be made only pursuant to written assignments from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one (1) year, or beyond the termination date of this Agreement, whichever occurs sooner.

The Union agrees to indemnify and hold harmless the Employer, from any claim, suit, cause of action, or otherwise as regards a creation of the Dues Deduction, its administration or any act or action in connection therewith and such indemnity and agreement to hold harmless shall include the payment of costs and attorney's fees on behalf of the beneficiaries of such indemnity.

## B. FEDERAL PAC CHECK OFF

The Employer will deduct FIVE CENTS ($0.05) for each hour that the employee receives wages under the terms of this Agreement on the basis of individually signed voluntarily authorized deduction forms and shall pay over the amount so deducted to the International Union of Operating Engineers Political Action Committee ("IUOE PAC"), 6200 Joliet Road, Countryside, Illinois 60525. It is agreed that these authorized deductions for the IUOE PAC are not conditions of membership in the International Union of Operating Engineers, Local 150, or of employment with the Employer, and that the IUOE PAC will use such monies in making political contributions in connection with federal elections. Payments to the IUOE PAC, accompanied by monthly reports on forms so provided by the International Union of Operating Engineers, Local 150, shall be remitted at the same time as required for the monthly pension and

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

welfare payments on a separate check made payable to the IUOE PAC at the above address. The Employer shall deduct a processing fee each month from the total amount to be transmitted to the IUOE PAC to be calculated at the Illinois Department of Revenue standard which is currently 1.75 percent.

The Union agrees to indemnify and hold harmless the Employer from any claim, suit, cause of action, or otherwise with regard to creation of this dues deduction, its administration, or any act or action in connection therewith, and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

## ARTICLE XVIII

## SECTION 1 – PENALTY FOR FAILURE TO PAY ALL FUND CONTRIBUTIONS AND/OR DUES CHECK OFF AND/OR JOINT GRIEVANCE COMMITTEE AND/OR ARBITRATION AWARD AND/OR ATTORNEY'S FEES/AND OR LIQUIDATED DAMAGES

If upon forty-eight (48) hours written notice the Employer fails to pay contributions to the Funds and/or dues check off contributions and/or liquidated damages, interest, or any other amounts owed to the Funds, and/or a signed grievance settlement, and/or an arbitration award, and/or attorney's fees (if after ninety (90) days of the entry of the Joint Grievance Committee or arbitration award, the award remains unpaid), the arbitration procedure herein provided for shall become inoperative and the Union shall be entitled to resort to all legal and economic remedies, including the right to strike and picket until such failure to pay has been corrected.

In addition, the Funds or Union are entitled to present a demand to any party that owes money to the Employer, and said party is authorized to pay such monies (not to exceed the amount owed by the party to the Employer) to the Funds or Union. In the event that the Funds or Union exercise this option, the Employer releases that party from liability for an amount equivalent to the amounts paid directly to the Funds or Union.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

As set forth in Article XIII, Section 1, Step 4 of this Agreement, if the Joint Grievance Committee is unable to resolve any grievance, and the Employer fails to post a bond or place into an escrow account designated by the Union in the required amount within fourteen (14) days of the date of the Joint Grievance Committee hearing, the Union shall have the right to resort to all legal and economic remedies, including the right to strike and picket until grievance has been resolved by arbitrator or fully remedied through a signed settlement agreement between the parties. This provision shall not apply on a repeated violation of the same provision of the Agreement if the Employer has already timely posted a bond or deposited into an escrow account the aggregate amount of $250,000.00 for previsions violations of that the same provision of the Agreement.

In the event the Union is entitled to recover its costs and attorney's fees under Article XIII of this Agreement, and these costs and attorney's fees are unpaid, the Union shall be entitled to resort to all legal and economic remedies, including the right to strike and picket until such failure to pay has been corrected.

Disputes as the effectiveness or validity of employee dues deduction authorizations shall not subject a contractor to any right to strike provided for in this Article. The Union must be advised specifically of any such dispute within forty-eight (48) hours of written notice.

## SECTION 2 – PENALTY FOR FAILURE TO PAY WAGES

If any Employer fails to pay wages, the arbitration procedure herein provided for shall become inoperative and the Union shall be entitled to resort to all legal and economic remedies, including the right to strike and picket until such failure to pay has been corrected including penalties set out in Article XVIII herein.

This clause shall be inoperative if the amount of wages is bonafidely disputed. In such instance, the Employer shall then pay the wages admitted to be due and the balance shall be settled by the arbitration procedure as provided herein.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

## SECTION 3 – BONDING OF EMPLOYER

The Union, may, at its discretion, demand a payment bond of any Employer guaranteeing payment of all earnings, vacation savings, welfare and pension benefit contributions which may become due.

## SECTION 4 – LEGITIMATE PICKET LINE

It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a legitimate labor dispute or refuses to go through or work behind any picket line, including the picket line of the Union party to this Agreement and including picket lines at the Employer's place or places of business. Furthermore, an employee may refuse to cross any picket line when he fears the bodily harm may be done to him.

## ARTICLE XIX

### SAVINGS CLAUSE

Any provision contained herein that is contrary to or held to be in violation of the Labor Management Relations Act of 1947, or any federal or state law now in force or hereafter enacted, or hereafter becoming effective shall be void and of no force or effect, and this contract shall be construed as if said provision herein were not a part hereof, it being intended, however, that the other provisions of this contract shall not be affected thereby.

It is further agreed that should compliance with any federal or state law, or amendment thereof, or any order or regulation issued thereunder, now or hereafter in force and effect prohibit the carrying out of any of the provisions of this Agreement, then to the extent of such deviation or prohibition, this Agreement shall be deemed to have been automatically amended, effective on the effective date of such law, order or regulation.

Such amendment to this contract shall remain in effect only so long as said law, amendment, order or regulation continues in force, or until the expiration of this Agreement, whichever event shall first occur.

69

## ARTICLE XX

**ENTIRE AGREEMENT OF THE PARTIES**

This represents the entire Agreement of the parties, it being understood that there is no other agreement or understanding, either oral or written. The Employer understands that the Union is a fraternal society and as such, and in keeping with the provisions of the Labor Management Relations Act of 1947, as amended has the right to prescribe its own rules and regulations with respect to the acquisition or retention of membership in the Union or with respect to any other matters for its own use. However, such rules or regulations whether contained in a by-laws, constitution or otherwise shall have no effect directly or indirectly upon this collective bargaining agreement, any employment relationship or the relationship between the parties.

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

**EFFECTIVE DATE**

    This Agreement shall become effective the 1st day of June, 2021, except as otherwise provided herein and remain in full force and effect until the 31st day of May, 2024, and shall thereafter continue from year to year, unless at least sixty (60) days prior to the expiration date, or as thereafter extended, either party hereto shall notify the other in writing of its intention to terminate. It is contemplated that the parties will, in said sixty (60) days period meet with each other to negotiate a new agreement.

    IN WITNESS WHEREOF, the parties have executed this Agreement this 30 day of June 2021.

REPRESENTING THE:                            REPRESENTING THE:
CHICAGO AREA INDEPENDENT                     INTERNATIONAL UNION OF
CONTRACTORS ASSOCIATION                      OPERATING ENGINEERS, LOCAL 150,
ON BEHALF OF ITS MEMBERS                     AFL-CIO

By: _____                 By: _____
    Chad Johnson                                James M. Sweeney
Its: _____                Its: President-Business Manager
    Director

By: _____                 By: _____
    Scott Habich                                Steven M. Cisco
Its: _____                Its: Recording-Corresponding Secretary
    Director

By: _____                 By: _____
                                                 Stanley A. Simrayh
Its: _____                    Director

CAICA                                        IUOE Local 150
22N292 Pepper Road                           6200 Joliet Road
Barrington, Illinois 60010                   Countryside, Illinois 60525
224-764-8604                                 708-482-8800
847-829-3706(fax)                            708-588-1629(fax)

71

## ILLUSTRATIONS AND DEFINITION OF
## PIGGYBACKING AND STAGING OF ELECTRIC SUBMERSIBLE PUMPS

## AS APPLIED IN THE HEAVY AND HIGHWAY AND BUILDING AGREEMENTS

Electric Submersible pumps may be physically connected to each other (piggyback) without causing any increase in discharge as calculated under this section.

Discharge of Electric Submersible pumps which are not piggy-backed but which are physically connected by hose, pipe, etc. or are otherwise staged shall be calculated separately and totaled in calculating total discharge under this section. (See illustration)



**REPRESENTING THE:**
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

**REPRESENTING THE:**
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

72

**MEMORANDUM OF CLARIFICATION**
Regarding Application of Illinois Building/Heavy and Highway and Underground Agreements of
Local 150 I.U.O.E. which expire on June 30, 1981 in their application to:

# SEWAGE PLANTS

This memorandum based on a site visit to the Aurora Sewage Plant, Montgomery, Illinois (See
minutes Case No. 79-17 and Joint Grievance Committee Minutes, January 4, 1980,) (A. J. Lowe
Co. vs. Local 150 I.U.O.E.) is effective July 15, 1980.

1. All sewer and watermain pipe outside of structure wall or building wall to be installed
   under the Heavy and Highway and Underground Agreement.

2. All sewer and watermain pipe inside a structure wall or building wall to be installed
   under the Illinois Building Agreement.

3. All air feed pipe and chemical feed pipe, even though installed underground, shall be
   installed under the Illinois Building Agreement.

**REPRESENTING THE:**
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

  **REPRESENTING THE:**
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

73

## COMPETITION COMMITTEE

The Union and the Association together shall create a Competition Committee.

This Committee shall consist of an equal number of members representing the Employer and Union with no less than three (3) persons from each group. The Union and/or Association may appoint alternate members.

The purpose of this Committee shall be to consider and implement under appropriate circumstance and base on adequate economic justification modification of the Agreement to apply to specific projects and/or geographic areas to assure continued work opportunities for employees working under this Agreement

**REPRESENTING THE:**
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

**REPRESENTING THE:**
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

74

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

## LETTER OF UNDERSTANDING

## DATED JUNE 1, 1987

## BETWEEN I.U.O.E. LOCAL 150 AND

## MID-AMERICA BARGAINING ASSOCIATION PERTAINING TO THE

## HEAVY & HIGHWAY & UNDERGROUND AGREEMENT,

## DISTRICTS 1, 2 & 3

Based on Article VIII, Section 1 where it says, "in the event a dispute arises over the applicability of preparation time, or oiler (Apprentice) requirements, due to the introduction of new models of machines or due to the manufacturer's or employer's de- rating or re-classification of any machine's size, lifting capacity, bucket capacity, or weight, a committee comprised of an equal number of representatives of the Union and the Association signatory hereto shall meet to make an equitable decision of the machine in question".

A dispute has arisen on a mining machine as to whether it is 5 ft. or over (Article VII, Section 10). The dispute is where to measure the machine to arrive at its proper size. After examining two like machines and arriving at two different diameters it was determined by the committee that the diameter of the shield should be the determining factor since it is the only part of the machine that the measurement remains constant.

**REPRESENTING THE:**
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

**REPRESENTING THE:**
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

75

## MID-AMERICA REGIONAL BARGAINING ASSOCIATION

## LABOR MANAGEMENT COMMITTEE TRENCHING MACHINES

A question has been raised by an Employer as to the intent of the word "trenching" as listed in Article XV "Classifications" of the Heavy and Highway and Underground Agreement, Districts 1, 2 and 3, dated June 1, 1987.

The Employer feels the intent of this classification in Class I was for large wheel type trenching machines and does not include small chain type trenchers. The Employer asks that under Article I, Section 2 Unlisted Equipment that chain type trenching machines be listed in Class IV.

After pictures and manufacturers brochures were reviewed by the Committee, the Committee by majority vote determined that chain type trenching machines, 12" and under, when used digging trenches for installation of telephone cable, TV cable, electric cable and natural gas services from the distribution line to the residence shall be included in Class IV.


REPRESENTING THE:                    REPRESENTING THE:
CHICAGO AREA INDEPENDENT              INTERNATIONAL UNION OF
CONTRACTORS ASSOCIATION              OPERATING ENGINEERS, LOCAL 150,
ON BEHALF OF ITS MEMBERS             AFL-CIO

76

## LETTER OF UNDERSTANDING

## DATED JUNE 1, 2001

## BETWEEN I.U.O.E. LOCAL 150 AND

## MID-AMERICA REGIONAL BARGAINING ASSOCIATION

## PERTAINING TO THE

## HEAVY & HIGHWAY & UNDERGROUND AGREEMENT,

## DISTRICTS 1, 2 & 3

A dispute has arisen over the interpretation of Article V, Section 2 wage payment specifically where it reads "payday shall be once each week on a specified day during work hours", also Article III, Section 4A payday for employees during show-up time period and 4B payday for employees who are not required to work during call off.

It is the finding of the Committee that payroll checks delivered by mail, or other means, or direct deposit, to the employees place of residence, or financial institution on the prescribed payday is an acceptable means of wage payment.

**REPRESENTING THE:**
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

**REPRESENTING THE:**
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

77

## ARBITRATION AWARD

After careful study of the record in its entirety, including all of the evidence and argument presented by both parties, the Arbitrator renders the following Award:

> The Employer did not violate Article III, Section 1, Subsection (c) "LUNCH PERIOD" of the Heavy, Highway and Underground Agreement when, on its Illinois Toll road job site, it operated a second shift utilizing some, but not all, machines utilized on the first shift and paid a one-half hour lunch period only to those first-shift employees whose machines were also actually operated on the second shift, rather than pay all first-shift employees a one-half hour lunch period.

> The grievance is denied.

Signed by me at Milwaukee, Wisconsin, this 23rd day of January, 1989.

Steven Briggs

The above decision by Steven Briggs of the American Arbitration Association is the result of a May 24, 1989, meeting of the M.A.R.B.A. Labor Management Committee. At this meeting, the Committee was unable to reach a majority decision and submitted the dispute to arbitration.

78

# CRUSHING OPERATIONS

One (1) Operator (Class I) shall be assigned to crushing operations, regardless of configuration or mode of power*, when the operation is producing one or multiple products.

If an additional employee is needed it shall be a member of the Bargaining Unit.

Scrap iron, steel or rebar and wood, petromat or other debris shall not be considered products.

The following will apply for either single or multiple product configurations:
The loader feeding the crusher will be operated by one (1) Operator (Class I). Any Crusher Operator listed above not in control of the plant, other than start up, may not operate the primary loader feeding the crusher, but may operate another machine (ie. A second loader, dozer, backhoe, breaker, wrecking ball breaker) directly associated with the crushing operation. The operation of any additional support equipment listed above will be assigned to Operators (Class I).

Additional "groundman" personnel assigned by the Employer to assist in the operation will be paid at the Class V rate of pay. A "groundman" will pick steel, burn with torches, shovel, sweep, grease and clean up around equipment, operate skid-steer loader, wash and maintain equipment and any other work incidental to the crushing operation.

*Crushing operation configuration includes, but is not limited to, down power or generators, crushers, conveyors, screen plants, wash plants, compressors and breaker attachments.

79

IN WITNESS WHEREOF, the parties have executed this Agreement this **30** day of **June**, 2021.

| | |
|---|---|
| REPRESENTING THE EMPLOYER: | REPRESENTING THE UNION: |
| CHICAGO AREA INDEPENDENT | INTERNATIONAL UNION OF |
| CONTRACTORS ASSOCIATION | OPERATING ENGINEERS, LOCAL 150, |
| ON BEHALF OF ITS MEMBERS | AFL-CIO |

By: _____

        Chad Johnson

Its: _____

        Director

By: _____

        Scott Habich

Its: _____

        Director

By: _____

Its: _____

By: _____

        James M. Sweeney

Its:   President-Business Manager

By: _____

        Steven M. Cisco

Its:   Recording-Corresponding Secretary

By: _____

        Stanley A. Simrayh

        Director

| | |
|---|---|
| CAICA | IUOE Local 150 |
| 22N292 Pepper Road | 6200 Joliet Road |
| Barrington, Illinois 60010 | Countryside, Illinois 60525 |
| 224-764-8604 | 708-482-8800 |
| 847-829-3706(fax) | 708-588-1629(fax) |

Dated:  May 29, 2003
Updated: June 1, 2021

80

# CONCRETE PLANTS

Concrete plants, regardless of configuration or mode of power*, will require one (1) Plant Operator (Class I) and one (1) Assistant Plant Operator (Class I).

The Assistant Plant Operator will be responsible for assisting in maintenance work on and around the plant. This operator can also be used to assist in the operation of the plant or as a cement tender (unloading blimps) at the discretion of the Employer.

Loaders at the plant will require an Operator in accordance with the contract.

Boilers, when used, will require an Operator (Class III).

*Concrete plant configuration includes, but is not limited to, down power or generators, conveyors, compressors, motors and dust collection system. Any equipment listed here that is operated at the plant as stand alone equipment, not part of the plant configuration, will require an operator in accordance with the contract.

Dated: May 29, 2003

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

# JOINT LABOR-MANAGEMENT UNIFORM DRUG/ALCOHOL ABUSE PROGRAM

### I.     POLICY STATEMENT

The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. _____(COMPANY NAME)_____, and the signatory unions seek to protect people and property, and to provide a safe working environment. The purpose of the following program is to establish and maintain a drug free, alcohol free, safe, healthy work environment for all of its employees.

### II.    DEFINITIONS

**A.**    <u>Company Premises</u> - The term "Company Premises" as used in this policy include all property, facilities, land, buildings, structures, automobiles, trucks and other vehicles owned, leased or used by the company.  Construction job sites for which the company has responsibility are included.

**B.**    <u>Prohibited Items & Substances</u> - Prohibited substances include illegal drugs (including controlled substances, look alike drugs and designer drugs), alcoholic beverages, and drug paraphernalia in the possession or for being used by an employee on the job.

**C.**    <u>Employee</u> - Individuals, who perform work for _____(COMPANY NAME)____, including, but not limited to, management, supervision, engineering, craft workers and clerical personnel.

**D.**    <u>Accident</u> - Any event resulting in injury to a person or property to which an employee, or contractor/contractor's employee, contributed as a direct or indirect cause.

**E.**    <u>Incident</u> - An event which has all the attributes of an accident, except no harm was caused to person or property.

**F.**    <u>Reasonable Cause</u> - Reasonable cause shall be defined as excessive tardiness, excessive absenteeism, and erratic behavior such as noticeable imbalance, incoherence, and disorientation.

82

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

### III.   CONFIDENTIALITY

**A.**     All parties to this policy and program have only the interests of employees in mind, therefore, encourage any employee
with a substance abuse problem to come forward and voluntarily accept our assistance in dealing with the illness.  An employee assistance program will provide guidance and direction for you during your recovery period. If you volunteer for help, the company will make every reasonable effort to return you to work upon your recovery.  The Company will also take action to assure that your illness is handled in a confidential manner.

**B.**     All actions taken under this policy and program will be confidential and disclosed only to those with a "need to know".

**C.**     When a test is required, the specimen will be identified by a code number, not by name, to insure confidentiality of the donor. Each specimen container will be properly labeled and made tamper proof.  The donor must witness this procedure.

**D.**     Unless an initial positive result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

**E.**     The handling and transportation of each specimen will be properly documented through the strict chain of custody procedures.

### IV.   RULES-DISCIPLINARY ACTIONS-GRIEVANCE PROCEDURES

1. **RULES** - All employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner.  Employees shall not:

    A. Use, possess, dispense or receive prohibited  substances on or at the job site; or

    B. report to work with any measurable amount of prohibited substances in their systems.

2.   **DISCIPLINE** - When the company has reasonable cause to believe an employee is under the influence of a prohibited substance, for reasons of safety, the employee may be suspended until test results are available.  If no test results are received after three (3) working days, the employee, if available, shall be returned to work with back pay. If the test results prove negative, the employee shall be reinstated with back pay.  In all other cases:

    A. Applicants testing positive for drug use will not be hired.

    B. Employees who have not voluntarily come forward, and who test positive for a drug use, will be terminated.

<p style="text-align:center">83</p>

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

    **C.**  Employees who refuse to cooperate with testing procedures will be terminated. Refusal to cooperate with testing procedures will be treated as the equivalent of a positive test.

    **D.**  Employees found in possession of drugs or drug paraphernalia will be terminated.

    **E.**  Employees found selling or distributing drugs will be terminated.

    **F.**  Employees found under the influence of alcohol while on duty, or while operating a company vehicle, will be subject to termination.

    **3.**    **PRESCRIPTION DRUGS** - Employees using a prescribed medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisor of such prescription drug use. For the safety of all employees, the company will consult with you and your physician to determine if a re-assignment of duties is necessary. The company will attempt to accommodate your needs by making an appropriate re-assignment. However, if a re-assignment is not possible, you will be placed on temporary medical leave until released as fit for duty by the prescribing physician.

    **4.**    **GRIEVANCE** - All aspects of this policy and program shall be subject to the grievance procedure of the applicable collective bargaining agreement.

    **V.**    **DRUG/ALCOHOL TESTING** - The parties to this policy and program agree that under certain circumstances, the company will find it necessary to conduct drug and alcohol testing. While "random" testing is not necessary for the proper operation of this policy and program, it may be necessary to require testing under the following conditions:

    **A.**    A new employee shall be eligible to be "pre-employment" tested either prior to starting work or within the first forty-eight (48) hours of employment. The employee is entitled to be compensated for the time required to submit the test and time while awaiting the results of the test;

    **B.**    A test may be administered in the event a supervisor has a reasonable cause to believe that the employee has reported to work under the influence, or is or has been under the influence while on the job; or has violated this drug policy. During the process of establishing reasonable cause for testing, the employee has the right to request his on-site representative to be present;

    **C.**    Testing may be required if an employee is involved in a workplace accident/incident or if there is a workplace injury;

<div align="center">84</div>

**D.**     Testing may be required as part of a follow-up to counseling or rehabilitation for substance abuse, for up to a one (1) year period;

**E.**  Employees may also be tested on a voluntary basis.

**F.**     Employer must notify the Union's dispatch office in writing, within a reasonable time, of any positive test result or refusal to cooperate with testing procedures.

Each employee will be required to sign a consent and chain of custody form, assuring proper documentation and accuracy.  If an employee refuses to sign a consent form authorizing the test, ongoing employment by the company will be terminated.

Drug testing will be conducted by an independent accredited laboratory (National Institute on Drug Abuse and/or College of American Pathology), and may consist of either blood or urine test, or both as required.  Blood tests will be utilized for post accident investigation only.

The company will bear the costs of all testing procedures.

## VI.     REHABILITATION AND EMPLOYEE ASSISTANCE PROGRAM

Employees are encouraged to seek help for a drug or alcohol problem before it deteriorates into a disciplinary matter.  If an employee voluntarily notifies supervision that he or she may have a substance abuse problem, the company will assist in locating a suitable employee assistance program for treatment, and will counsel the employee regarding medical benefits available under the company or union health and welfare/insurance program.

If treatment necessitates time away from work, the company shall provide for the employee an unpaid leave of absence for purposes of participation in an agreed upon treatment program.  An employee who successfully completes a rehabilitation program shall be reinstated to his/her former employment status, if work for which he/she is qualified exists.

Employees returning to work after successfully completing the rehabilitation program will be subject to drug tests without prior notice for a period of one year.  A positive test will then result in disciplinary action as previously outlined in this policy and program.

85

## EMPLOYER PERSONNEL POLICY SIDE LETTER

The International Union of Operating Engineers, Local 150, AFL-CIO, ("Local 150"), and the Chicago Area Independent Contractors Association ("CAICA") are currently parties to collective bargaining agreements known as the Illinois Heavy, Highway, and Underground Agreement and the Illinois Building Agreement, both effective June 1, 2021, amended and extended through May 31, 2024. Those Agreements include management rights clauses which state:

> The right to manage and conduct the business, including the right to determine what operations are to be conducted, the methods and means of all operations, to introduce new, improved or changed methods, equipment or facilities, to determine the machinery and equipment to be utilized, the right to hire, promote, manage, and direct the workforce, to schedule the days, hours and shifts of operation, to determine when overtime shall be worked, to layoff and recall employees, to curtail or close down any operation, to sell and dispose of all or any part of the Employer's assets, and to contract or subcontract work, except as specifically limited by this Agreement, are reserved solely to the Employer. The Employer shall not be permitted to alter, modify, derate, override, bypass, or manipulate any equipment to avoid the requirements contained in this Agreement.

The parties confirm all terms and conditions of those Agreements in effect with the following additions and only these additions:

1. The management rights clauses to the Agreements permit individual employers to adopt personnel policies. Such policies are effective to the extent their content is not otherwise specifically limited by or contrary to the terms and conditions of the Agreements;

2. Individual employers may require individual employees represented by Local 150 to sign copies of employer personnel policies in order to acknowledge receipt. Such signatures are not a waiver by the individual employee or the Union of their rights to challenge the promulgation, implementation or application of such policies in the appropriate forum, including but not limited to the grievance procedure and/or the National Labor Relations Board;

3. Local 150 reserves the right to challenge any individual employer policies to the extent it contends or believes such policies are contrary to any of the specific provisions of the Agreements or to the National Labor Relations Act; and

4. Individual employees may be required to sign such forms as required by any governmental body/agency or regulation/directive/statute, or by a project owner, as a condition of hire, such as:

   - Form W-4
   - Form IL-W-4

<center>86</center>

<div align="right">
Illinois Heavy & Highway Agreement<br>
Steven M. Cisco<br>
Stanley A. Simrayh<br>
Final 6-27-21/rap
</div>

- Federal Contractor EEO/Veteran Self-Identification Forms
- USCIS Form I-9 (Employment Eligibility Verification)
- Background authorization check forms for employment on projects at schools/hospitals/day-care and pre-school centers/libraries (and similar facilities), nuclear or other power generation station facilities, airports, rail yards and railroads, refineries, the Metropolitan Water Reclamation District of Greater Chicago.
- Forms acknowledging that Operators required to possess a valid CDL for job purposes are subject to IDOT and/or USDOT drug and alcohol testing protocols and requirements.

This list is not an exclusive list. By agreeing to this list of examples, the Union does not waive its right to challenge a requirement that an individual sign any Form not listed above under this paragraph as contrary to any of the specific provisions of the Agreements in the appropriate forum, including but not limited to the grievance procedure and/or the National Labor Relations Board.

In addition, the use of such forms on a project are subject to the pre-job/job conference provisions set forth in the Agreements. Either party, if it elects, may request a pre-job/job conference on this topic under the agreements.

IN WITNESS WHEREOF, the parties have executed this Agreement this __30__ day of __June__, 2021.

REPRESENTING THE:
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

By: _____
        Chad Johnson
Its: _____
        Director

By: _____
        Scott Habich
Its: _____
        Director

By: _____
Its: _____

CAICA

REPRESENTING THE:
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

By: _____
        James M. Sweeney
Its: President-Business Manager

By: _____
        Steven M. Cisco
Its: Recording-Corresponding Secretary

By: _____
        Stanley A. Simrayh
        Director

IUOE Local 150

87

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

22N292 Pepper Road
Barrington, Illinois 60010
224-764-8604
847-829-3706(fax)

6200 Joliet Road
Countryside, Illinois 60525
708-482-8800
708-588-1629(fax)

88

## OFF ROAD TRUCKS

Employers may request and the Union will provide, if available, first and second year apprentices to operate off-road truck equipment, to be paid as required by the agreements.

If no such apprentices are available, journeymen will be provided by the Union and they may be paid at the third-year apprentice first half rate, with full journeyman benefits, for non-prevailing wage work.

IN WITNESS WHEREOF, the parties have executed this Agreement this **30** day of **June**, 2021.

REPRESENTING THE EMPLOYER:
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

By: _____
     Chad Johnson
Its: _____
     Director

By: _____
     Scott Habich
Its: _____
     Director

By: _____

Its: _____

REPRESENTING THE UNION:
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

By: _____
     James M. Sweeney
Its: President-Business Manager

By: _____
     Steven M. Cisco
Its: Recording-Corresponding Secretary

By: _____
     Stanley A. Simrayh
     Director

CAICA
22N292 Pepper Road
Barrington, Illinois 60010
224-764-8604
847-829-3706(fax)

IUOE Local 150
6200 Joliet Road
Countryside, Illinois 60525
708-482-8800
708-588-1629(fax)

89

## LETTER OF UNDERSTANDING REGARDING RANDOM DRUG TESTING

The establishment and implementation of a drug testing program, including but not limited to a random drug testing program administered by an independent third party which Employers may opt into on an Employer-by-Employer basis, is hereby reserved for the future consideration of the parties. Upon service of sixty (60) days' notice in writing by either party, such issue shall be taken up for discussion and further negotiation by the parties hereto. Neither the request for, nor the conduct of, said negotiations shall impact the validity or enforceability of any other provision of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement this __30__ day of __June__, 2021.

REPRESENTING THE EMPLOYER:
CHICAGO AREA INDEPENDENT
CONTRACTORS ASSOCIATION
ON BEHALF OF ITS MEMBERS

By: _____
Chad Johnson
Its: _____
Director

By: _____
Scott Habich
Its: _____
Director

By: _____
Its: _____

CAICA
22N292 Pepper Road
Barrington, Illinois 60010
224-764-8604
847-829-3706(fax)

REPRESENTING THE UNION:
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150,
AFL-CIO

By: _____
James M. Sweeney
Its: President-Business Manager

By: _____
Steven M. Cisco
Its: Recording-Corresponding Secretary

By: _____
Stanley A. Simrayh
Director

IUOE Local 150
6200 Joliet Road
Countryside, Illinois 60525
708-482-8800
708-588-1629(fax)

90

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap

# PANDEMIC ADDENDUM

In any county or portion thereof covered by this Agreement, if the Illinois Governor declares a public health emergency, and for the duration thereof, the Employer shall abide by recommendations from the Centers for Disease Control and Prevention (CDC) and the Illinois Department of Public Health (IDPH), and all applicable laws and regulations, for construction worker health and safety. If the Employer fails to timely comply with such requirements after notice from and discussion with the Union, the Union may withdraw employees from any worksite not in compliance herewith.

91

Illinois Heavy & Highway Agreement
Steven M. Cisco
Stanley A. Simrayh
Final 6-27-21/rap



# EXHIBIT D



# INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150 OM
AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**JAMES M. SWEENEY**
PRESIDENT-BUSINESS MANAGER

(708) 482-8800 · FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

October 13, 2023

*Sent Via Email: sam@jimenezson's.com*
*and Priority Mail: 9488 8090 0027 6170 5380 70*

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
718 S. Claremont Avenue
Chicago, Illinois 60612

RE:  ***Jimenez & Sons Excavating & Trucking, Inc.*** - Violation of Article XII – Hiring; plus any and all other related Articles and Sections of the *CAICA* Illinois Heavy and Highway and Underground Agreement.
**Union File No. 23-1-048**          *(Excavator – Class I)*

Dear Mr. Jimenez:

We are advised that your company is in violation of various articles and sections, including but not limited to those captioned above, of the *CAICA* Illinois Heavy and Highway and Underground Agreement (Districts 1-2-3), to which your Company and this Union are parties by virtue of a Memorandum of Agreement signed May 10, 2016.

We are further advised that the above-stated violation occurred on or about September 18th and 20th and October 4th, 9th and 10th of 2023 and is ongoing*, on your construction site located at 2009 S. Lumber, in Chicago, Illinois, within Local 150's jurisdictional territory where your company failed to obtain employees through the referral offices of Local Union 150 and pay the proper wages and fringe benefits in accordance with our Agreement. See attached Agent's Statement for further details, including damages owed in the current estimated amount of $ 4,496.15*.

In compliance with Step One of the Grievances and Arbitration clause of our Agreement, Article XIII, Section 1, our Business Representative, Tyrone Gaston spoke with you via telephone, but the grievance remains unresolved.   Therefore, in a further attempt to resolve this dispute, we have scheduled a **meeting** with your designated company officials on **Tuesday, November 28, 2023, at 8:50 a.m., at our office IUOE Local 150 Operating Engineers, 6200 Joliet Road, Countryside, IL.**  If the Company Officer cannot attend, please have a non-lawyer representative available who has the authority to settle this grievance.  **Please acknowledge receipt of this notification.**

*Ongoing

INTERNATIONAL UNION OF OPERATING ENGINEERS

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
Grievance Violation Letter
October 13, 2023
File No. 23-1-048
Page 2 of 3

It is in the best interest of your company to negotiate a settlement at the pre-grievance hearing on the above referenced date and time. Many grievances are resolved at this meeting. If you do not attend the pre-grievance hearing and this matter remains unresolved, it will be automatically scheduled for the next meeting of the Joint Grievance Committee ("JGC").

If the JGC is unable to resolve the grievance by majority vote, your company shall be required to either post a bond or deposit into an escrow account designated by the Union $25,000.00 (representing a potential award of attorney fees and costs) plus the amount claimed in the grievance within fourteen days (14) of the date of the JGC hearing. If your company fails to either post a bond or deposit the required amount into the escrow account within fourteen (14) days the Union shall have the right to resort to all legal and economic remedies, including the right to strike and picket until grievance has been resolved by arbitrator or fully remedied through a signed settlement agreement between the parties.

This Union shall continue to hold your Company liable for all appropriate remedies, including but not limited to any back wages and fringe benefits lost by all affected members of the bargaining unit who would be working had you honored our Agreement.

Sincerely,
James M. Sweeney
PRESIDENT-BUSINESS MANAGER

BY:    Stanley A. Simrayh
Director

SAS/hca
Attachment
cc:    Dale D. Pierson, General Counsel
       Michael R. Kresge, Recording-Corresponding Secretary
       Jeffrey A. Horne, Vice-President
       Keri Bjelke, MOE Delinquency Manager
       Tyrone Gaston, Business Representative – Dist. 1
       Chad Johnson, President - CAICA

# EXHIBIT E

**JOINT GRIEVANCE COMMITTEE**
**INTERNATIONAL UNION OF OPERATING ENGINEERS,**
**LOCAL 150, AFL-CIO**

| **CO-CHAIRMAN** | **CO-CHAIRMAN** |
|---|---|
| James M. Sweeney/Steven M. Cisco | Chad Johnson |
| International Union of Operating Engineers | Chicago Area Independent Contractors |
| Local 150 | Association |
| 6200 Joliet Road, Countryside, IL 60525 | 22159 N. Pepper Road, Suite #1S |
| (708) 482-8800 – Fax (708) 588-1629 | Barrington, Illinois 60156 |
| | (847) 854-0044 – Fax (847) 854-0110 |

December 1, 2023

*Sent Via Email: sam@jimenezsons.com*
*and Priority Mail: 9488 8090 0027 6170 5382 85*

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
718 S. Claremont Avenue
Chicago, Illinois 60612

RE:  *Jimenez & Sons Excavating & Trucking, Inc.* - Violation of Article XII – Hiring; plus
any and all other related Articles and Sections of the *CAICA* Illinois Heavy and Highway
and Underground Agreement.
**Union File No. 23-1-048**        *(Excavator – Class I)*

Dear Mr. Jimenez:

A hearing of the above-referenced grievance will be held at the office of **the
International Union of Operating Engineers, Local 150, 6200 Joliet Road, Countryside,
Illinois, 60525,** at the time and date indicated below:

> **DATE:**   **Wednesday, December 13, 2023**
> **TIME:**   **9:00 a.m.**

Please note that the Joint Grievance Committee may, by majority vote, reach a binding
decision and may act in the absence of either party. The proceedings assure an opportunity to
present matters in your behalf, including any documented evidence, records, witnesses, etc., and
to rebut testimony of the Grievant or his Representative. Attached is a copy of the pre-grievance
letter for your review.

Sincerely,

Michael R. Kresge/hca

Michael R. Kresge
Recording-Corresponding Secretary

SMC/hca
Attachment
cc:    Joint Grievance Committee Co-Chairmen
       Dale D. Pierson, General Counsel
       Stanley A. Simrayh, Director
       Jeffrey A. Horne, Business Representative– Dist. 1
       Tyrone Gaston, Business Representative – Dist. 1



# INTERNATIONAL UNION OF OPERATING ENGINEERS

LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**JAMES M. SWEENEY**
PRESIDENT-BUSINESS MANAGER

(708) 482-8800 · FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

October 13, 2023



*Sent Via Email: sam@jimenezson's.com*
*and Priority Mail: 9488 8090 0027 6170 5380 70*

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
718 S. Claremont Avenue
Chicago, Illinois 60612

RE:  ***Jimenez & Sons Excavating & Trucking, Inc.*** - Violation of Article XII – Hiring; plus
     any and all other related Articles and Sections of the *CAICA* Illinois Heavy and Highway
     and Underground Agreement.
     **Union File No. 23-1-048**          *(Excavator – Class I)*

Dear Mr. Jimenez:

    We are advised that your company is in violation of various articles and sections,
including but not limited to those captioned above, of the *CAICA* Illinois Heavy and Highway
and Underground Agreement (Districts 1-2-3), to which your Company and this Union are
parties by virtue of a Memorandum of Agreement signed May 10, 2016.

    We are further advised that the above-stated violation occurred on or about September
18th and 20th and October 4th, 9th and 10th of 2023 and is ongoing*, on your construction site
located at 2009 S. Lumber, in Chicago, Illinois, within Local 150's jurisdictional territory where
your company failed to obtain employees through the referral offices of Local Union 150 and
pay the proper wages and fringe benefits in accordance with our Agreement. See attached
Agent's Statement for further details, including damages owed in the current estimated amount
of **$ 4,496.15***.

    In compliance with Step One of the Grievances and Arbitration clause of our Agreement,
Article XIII, Section 1, our Business Representative, Tyrone Gaston spoke with you via
telephone, but the grievance remains unresolved.    Therefore, in a further attempt to resolve this
dispute, we have scheduled a **meeting** with your designated company officials on **Tuesday,
November 28, 2023, at 8:50 a.m., at our office IUOE Local 150 Operating Engineers, 6200
Joliet Road, Countryside, IL.**  If the Company Officer cannot attend, please have a non-lawyer
representative available who has the authority to settle this grievance.  **Please acknowledge
receipt of this notification.**

*Ongoing

Page 1 of 3

INTERNATIONAL UNION OF OPERATING ENGINEERS

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
Grievance Violation Letter
October 13, 2023
File No. 23-1-048
Page 2 of 3

It is in the best interest of your company to negotiate a settlement at the pre-grievance hearing on the above referenced date and time. Many grievances are resolved at this meeting. If you do not attend the pre-grievance hearing and this matter remains unresolved, it will be automatically scheduled for the next meeting of the Joint Grievance Committee ("JGC").

If the JGC is unable to resolve the grievance by majority vote, your company shall be required to either post a bond or deposit into an escrow account designated by the Union $25,000.00 (representing a potential award of attorney fees and costs) plus the amount claimed in the grievance within fourteen days (14) of the date of the JGC hearing. If your company fails to either post a bond or deposit the required amount into the escrow account within fourteen (14) days the Union shall have the right to resort to all legal and economic remedies, including the right to strike and picket until grievance has been resolved by arbitrator or fully remedied through a signed settlement agreement between the parties.

This Union shall continue to hold your Company liable for all appropriate remedies, including but not limited to any back wages and fringe benefits lost by all affected members of the bargaining unit who would be working had you honored our Agreement.

Sincerely,
James M. Sweeney
PRESIDENT-BUSINESS MANAGER

By:     Stanley A. Simrayh
Director

SAS/hca
Attachment
cc:     Dale D. Pierson, General Counsel
        Michael R. Kresge, Recording-Corresponding Secretary
        Jeffrey A. Horne, Vice-President
        Keri Bjelke, MOE Delinquency Manager
        Tyrone Gaston, Business Representative – Dist. 1
        Chad Johnson, President - CAICA

INTERNATIONAL UNION OF OPERATING ENGINEERS

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
Grievance Violation Letter
October 13, 2023
File No. 23-1-048
Page 3 of 3

### STATEMENT OF BUSINESS AGENT

TO:   Stanley A. Simrayh
      Director

RE:   ***Jimenez & Sons Excavating & Trucking, Inc.*** - Violation of Article XII – Hiring; plus any and
      all other related Articles and Sections of the ***CAICA*** Illinois Heavy and Highway and
      Underground Agreement.
      **Union File No. 23-1-048**

|  |  |
|---|---|
| **Summary:** | Non-bargaining unit employee operating equipment. |
| **Pictures Taken.** | |
| **Violation Dates:** | September 18th and 20th and October 4th, 9th and 10th of 2023 & Ongoing* |
| **Relief Sought:** | Wages and fringe benefits for *Excavator – Class I* |

| | | | |
|---|---|---|---|
| **Wages:**<br>Excavator | $54.80 x 8 Hours x 5 Days = | $ 2,192.00* | |
| **Wages – O.T.:** | $82.20 x 2.5 Hours = | $   205.50* | |
| | **Subtotal Wages & O.T. Wages =** | $2,397.50* | |
| **Fringe Benefits:** | $49.38 x 42.5 Hours = | $2,098.65* | |
| | **Grand Total Wages, O.T. Wages & Fringes =** | $4,496.15* | **Made Payable to the I.U.O.E. Local 150 Scholarship Fund, Inc.** |

*This amount will increase with each additional day/date of violation.*

Tyrone Gaston, Business Representative – Dist. 1
October 13, 2023
File No. 23-1-048

# EXHIBIT F

# JOINT GRIEVANCE COMMITTEE
## INTERNATIONAL UNION of OPERATING ENGINEERS,
### LOCAL 150, AFL-CIO

| **CO-CHAIRMAN** | **CO-CHAIRMAN** | **CO-CHAIRMAN** | **CO-CHAIRMAN** |
|---|---|---|---|
| JAMES M. SWEENEY, PRESIDENT INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150 6200 JOLIET ROAD COUNTRYSIDE, IL 60525 PHONE: (708) 482-8800 FAX: (708) 588-1629 | LES CHENEY, EXECUTIVE DIRECTOR CONTRACTORS' ASSOCIATION OF WILL & GRUNDY COUNTIES 233 SPRINGFIELD AVENUE JOLIET, ILLINOIS 60435 PHONE: (815) 741-1455 FAX: (815) 741-2165 | DAVID SNELTEN, PRESIDENT EXCAVATORS, INC. 759 RIDGEVIEW DRIVE MCHENRY, ILLINOIS 60050 PHONE: (815) 356-6547 FAX: (815) 356-6548 | AARON JANIK, EXECUTIVE DIRECTOR MID-AMERICA REGIONAL BARGAINING ASSOCIATION 2720 RIVER ROAD DES PLAINES, ILLINOIS 60018 PHONE: (847) 699-1283 FAX: (847) 699-9947 |

December 15, 2023

*Sent Via Email: sam@jimenezson's.com*
*and Priority Mail: 9488 8090 0027 6170 5165 42*

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
718 S. Claremont Avenue
Chicago, Illinois 60612

RE:     ***Jimenez & Sons Excavating & Trucking, Inc.*** - Violation of Article XII -- Hiring; plus any and all other related Articles and Sections of the ***CAICA*** Illinois Heavy and Highway and Underground Agreement.
      **Union File No. 23-1-048**       *(Excavator – Class I)*

Dear Mr. Jimenez:

      This will confirm the decision of the Joint Grievance Committee in regard to the above-referenced matter following the hearing held on    **December 13, 2023**  , at the local union office of Local 150 Operating Engineers, Countryside, Illinois. Based on the testimony heard and per your agreement, the Committee by majority decision determined as follows:

1)      The Employer is party to a current valid Collective Bargaining Agreement with the IUOE Local 150 Operating Engineers.

2)      The Employer violated the Collective Bargaining Agreement.

3)      The Employer shall pay the aggregate amount of **$ 21,572.79** made payable to IUOE Local 150 Scholarship Fund.

4)      If payment of the decision and award is not received by the requested due date stated below, the ten (10%) percent liquidated damages will be added to the above decision amount and will **NOT** be waived. The above grievance will not be resolved until the balance is paid in full plus any other additional attorney's fees if applicable.

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
Joint Grievance Board Decision
File No. 23-1-048
December 15, 2023
Page 2 of 2

    5)      All checks must be mailed to the attention of Michael R. Kresge, Recording-Corresponding Secretary, at the I.U.O.E. Local 150, 6200 Joliet Road, Countryside, IL 60525.

    Your attention is directed to Article XIII, Section 1 – Step 4 of the Illinois Heavy and Highway and Underground Agreement which provides in part that: "Decision of the Joint Grievance Committee and Arbitration Awards shall be complied with within **seven (7) days** of receipt of the decision by the losing party. A party which fails to comply within the seven (7) day period shall be required to pay an **additional ten (10%) percent** of the amounts owed as liquidated damages for failure to comply with the decision or award. In the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party."

    Sincerely,

    Heidi C. Adams
    Committee Secretary

HCA/hs
cc:    Co-Chairmen
      Dale D. Pierson, General Counsel
      Michael R. Kresge, Recording-Corresponding Secretary
      Stanley A. Simrayh, Director
      Tyrone Gaston, Business Representative – Dist. 1

# JOINT GRIEVANCE COMMITTEE
## INTERNATIONAL UNION of OPERATING ENGINEERS,
### LOCAL 150, AFL-CIO

| CO-CHAIRMAN | CO-CHAIRMAN |
|---|---|
| JAMES M. SWEENEY/STEVEN M. CISCO<br>INTERNATIONAL UNION OF OPERATING ENGINEERS<br>LOCAL 150<br>6200 JOLIET ROAD, COUNTRYSIDE, IL 60525<br>(708) 482-8800 – FAX (708) 588-1629 | CHAD JOHNSON<br>CHICAGO AREA INDEPENDENT CONTRACTORS<br>ASSOCIATION<br>22159 N. PEPPER ROAD, SUITE #1S<br>BARRINGTON, ILLINOIS 60010<br>(847) 854-0044 EXT #12 - FAX (847) 854-0110 |

Date: _12-13-23_

Grievance No.: _23-1-048_

Employer: _Jimenez + Sons Excavating + Trucking, Inc._

## DECISION

Based on the testimony heard, the Committee by majority decision determined as follows:

1. The Employer is party to a current valid Collective Bargaining Agreement with the I.U.O.E. Local 150.

2. The Employer violated the Collective Bargaining Agreement.

3. The Employer shall pay the amount of $ _21,572.79_ , made payable to the IUOE Local 150 Scholarship Fund. _THIS AMOUNT SHALL BE WAIVED IF EMPLOYER COMPLYS WITH #5_

4. The check should be sent to the address of I.U.O.E., Local 150 Operating Engineers, 6200 Joliet Road, Countryside, IL. 60525 to the attention of Stanley A. Simrayh, Director for distribution.

5. _THE EMPLOYER SAM JIMENEZ HAS UNTIL 12.29.23 TO PRODUCE PAPERWORK SHOWING WHO AND WHERE WAS PAID FOR_

6. _THE WORK PERFORMED_

APPROVED:

_____
MANAGEMENT CHAIRMAN

_____
UNION CHAIRMAN

# EXHIBIT G

# INTERNATIONAL UNION OF OPERATING ENGINEERS

### LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M
#### AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT



**JAMES M. SWEENEY**
PRESIDENT-BUSINESS MANAGER

(708) 482-8900  ·  FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

February 13, 2024

*Sent Via Email: sam@jimenezsons.com*
*and Priority Mail: 9488 8090 0027 6170 5165 80*

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
718 S. Claremont Avenue
Chicago, Illinois  60612

RE:     ***Jimenez & Sons Excavating & Trucking, Inc.*** - Violation of Article XII – Hiring; plus
any and all other related Articles and Sections of the *CAICA* Illinois Heavy and Highway
and Underground Agreement.
**Union File No. 23-1-048**          *(Excavator – Class I)*

Dear Mr. Jimenez:

As of this date, the I.U.O.E. Local 150 has not received your settlement check in regard
to the above-referenced matter(s).  A copy of the JGC Decision & Award dated December 13,
2023 is again attached for your review.  To avoid any and all legal fees and court costs, please
submit your settlement check within ten (10) calendar days from receipt of this letter payable in
the amount of **$23,730.07, which includes ten (10%) percent liquidated damages as follows:**

1.  **$23,730.07** made payable to the I.U.O.E. Local 150 Scholarship Fund.

**Please mail your check to the attention of Stanley A. Simrayh, Director, 6200 Joliet**
**Road, Countryside, Illinois 60525 (for distribution).**

If the amount due has not been received within the allotted time, this matter will be
forwarded to our attorneys and the Union shall be entitled to all legal and economic remedies
including the right to strike and picket until such failure to pay has been corrected.  All Legal
fees and court costs will be your responsibility.

If you have any questions, please contact the undersigned at (708) 482-8800.

Sincerely,

Stanley A. Simrayh
Director

SAS/hca
Attachment

cc:     Dale D. Pierson, General Counsel
Tyrone Gaston, Business Representative – Dist. 1



INTERNATIONAL UNION of OPERATING ENGINEERS,
LOCAL 150, AFL-CIO

FILE COPY

| **CO-CHAIRMAN** | **CO-CHAIRMAN** | **CO-CHAIRMAN** | **CO-CHAIRMAN** |
|---|---|---|---|
| JAMES M. SWEENEY, PRESIDENT INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150 6200 JOLIET ROAD COUNTRYSIDE, IL 60525 PHONE: (708) 482-8800 FAX: (708) 588-1629 | LES CHENEY, EXECUTIVE DIRECTOR CONTRACTORS' ASSOCIATION OF WILL & GRUNDY COUNTIES 233 SPRINGFIELD AVENUE JOLIET, ILLINOIS 60435 PHONE: (815) 741-1455 FAX: (815) 741-2165 | DAVID SNELTEN, PRESIDENT EXCAVATORS, INC. 759 RIDGEVIEW DRIVE MCHENRY, ILLINOIS 60050 PHONE: (815) 356-6547 FAX: (815) 356-6548 | AARON JANIK, EXECUTIVE DIRECTOR MID-AMERICA REGIONAL BARGAINING ASSOCIATION 2720 RIVER ROAD DES PLAINES, ILLINOIS 60018 PHONE: (847) 699-1283 FAX: (847) 699-9947 |

December 15, 2023

*Sent Via Email: sam@jimenezson's.com*
*and Priority Mail: 9488 8090 0027 6170 5165 42*

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
718 S. Claremont Avenue
Chicago, Illinois 60612

RE:   ***Jimenez & Sons Excavating & Trucking, Inc.*** - Violation of Article XII – Hiring; plus
any and all other related Articles and Sections of the ***CAICA*** Illinois Heavy and Highway
and Underground Agreement.
**Union File No. 23-1-048**          *(Excavator – Class I)*

Dear Mr. Jimenez:

This will confirm the decision of the Joint Grievance Committee in regard to the above-referenced matter following the hearing held on   **December 13, 2023** , at the local union office of Local 150 Operating Engineers, Countryside, Illinois. Based on the testimony heard and per your agreement, the Committee by majority decision determined as follows:

1)      The Employer is party to a current valid Collective Bargaining Agreement with the IUOE Local 150 Operating Engineers.

2)      The Employer violated the Collective Bargaining Agreement.

3)      The Employer shall pay the aggregate amount of $ **21,572.79** made payable to IUOE Local 150 Scholarship Fund.

4)      If payment of the decision and award is not received by the requested due date stated below, the ten (10%) percent liquidated damages will be added to the above decision amount and will **NOT** be waived. The above grievance will not be resolved until the balance is paid in full plus any other additional attorney's fees if applicable.

Mr. Sam Jimenez, Owner
Jimenez & Sons Excavating & Trucking, Inc.
Joint Grievance Board Decision
File No. 23-1-048
December 15, 2023
Page 2 of 2

5) All checks must be mailed to the attention of Michael R. Kresge, Recording-Corresponding Secretary, at the I.U.O.E. Local 150, 6200 Joliet Road, Countryside, IL 60525.

Your attention is directed to Article XIII, Section 1 – Step 4 of the Illinois Heavy and Highway and Underground Agreement which provides in part that: "Decision of the Joint Grievance Committee and Arbitration Awards shall be complied with within **seven (7) days** of receipt of the decision by the losing party. A party which fails to comply within the seven (7) day period shall be required to pay an **additional ten (10%) percent** of the amounts owed as liquidated damages for failure to comply with the decision or award. In the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party."

Sincerely,

*Heidi C. Adams*

Heidi C. Adams
Committee Secretary

HCA/hs
cc: Co-Chairmen
Dale D. Pierson, General Counsel
Michael R. Kresge, Recording-Corresponding Secretary
Stanley A. Simrayh, Director
Tyrone Gaston, Business Representative – Dist. 1

INTERNATIONAL UNION of OPERATING ENGINEERS
LOCAL 150, AFL-CIO

| CO-CHAIRMAN | CO-CHAIRMAN |
|---|---|
| JAMES M. SWEENEY/STEVEN M. CISCO<br>INTERNATIONAL UNION OF OPERATING ENGINEERS<br>LOCAL 150<br>6200 JOLIET ROAD, COUNTRYSIDE, IL 60525<br>(708) 482-8800 – FAX (708) 588-1629 | CHAD JOHNSON<br>CHICAGO AREA INDEPENDENT CONTRACTORS<br>ASSOCIATION<br>22159 N. PEPPER ROAD, SUITE #1S<br>BARRINGTON, ILLINOIS 60010<br>(847) 854-0044 EXT #12 - FAX (847) 854-0110 |

Date: _12-13-23_

Grievance No.: _23-1-048_

Employer: _Jimenez + Sons Excavating + Trucking, Inc._

## D E C I S I O N

Based on the testimony heard, the Committee by majority decision determined as follows:

1. The Employer is party to a current valid Collective Bargaining Agreement with the I.U.O.E. Local 150.

2. The Employer violated the Collective Bargaining Agreement.

3. The Employer shall pay the amount of $ _21 572.79_ , made payable to the IUOE Local 150 Scholarship Fund. _THIS AMOUNT SHALL BE WAIVED IF EMPLOYER COMPLYS WITH #5_

4. The check should be sent to the address of I.U.O.E., Local 150 Operating Engineers, 6200 Joliet Road, Countryside, IL. 60525 to the attention of Stanley A. Simrayh, Director for distribution.

5. _THE EMPLOYER SAM JIMENEZ HAS UNTIL 12.29.23 TO PRODUCE PAPERWORK SHOWING WHO AND WHERE WAS PAID FOR_

6. _THE WORK PERFORMED_

APPROVED:

MANAGEMENT CHAIRMAN

UNION CHAIRMAN